207 F.3d 105 (2nd Cir. 2000)
 JOSEPH WALDMAN; Plaintiff-Appellant;
v.
VILLAGE OF KIRYAS JOEL; ABRAHAM WIEDER; JACOB MITTELMAN; SOLOMON WERTZBERGER; YUDEL KAHAN; MENDEL SCHWIMMER; GEDALYE SZEGEDIN, in their official and individual capacities; Defendants-Appellees;
MAYER HIRSCH; KIRYAS JOEL HOUSING AUTHORITY; MOSES NEUMAN, in his official and individual capacity; VAAD HAKIRYAH, of Kiryas Joel, Inc.; TOWN OF MONROE; ORANGE COUNTY BOARD OF ELECTIONS; ALEXANDER F. TREDWELL, Secretary of State, State of New York; Defendants.
 Docket No. 99-7830
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: January 10, 2000
Decided: March 21, 2000
 
 Plaintiff-appellant, a village resident and a member of a dissident religious group, appeals from the district court's dismissal of his action to dissolve the village. The district court found the suit to be barred by res judicata. We affirm.
 MICHAEL H. SUSSMAN, Goshen, N.Y. (Stephen Bergstein, Law Offices of Michael H. Sussman, on the brief), for Plaintiff-Appellant.
 GERALD A. NOVACK, New York, N.Y. (Wendy E.D. Smith, Sean R. Sullivan, Kirkpatrick & Lockhart LLP, Andrew S. Fisher, Fisher, Fisher & Berger, on the brief), for Defendants-Appellees Village and Szegedin.
 Dennis E.A. Lynch, Nyack, N.Y. (Dorfman, Lynch & Knoebel, on the brief), for Defendants-Appellees Wider, Mittelman, Wertzberger, Kahan, and Schwimmer.
 Before: WINTER, Chief Judge, JACOBS, and CALABRESI, Circuit Judges.
 CALABRESI, Circuit Judge:
 
 
 1
 Plaintiff-appellant Joseph Waldman, a resident of the Village of Kiryas Joel ("Village" or "Kiryas Joel"), brought this suit accusing the Village of excessive entanglement with religion and seeking its dissolution. In a thorough opinion, the district court (Barrington D. Parker, Jr., Judge) concluded that Waldman's suit against defendants-appellees the Village and its officials was barred by res judicata as a result of a prior suit against the Village in which Waldman was a named plaintiff. See Waldman v. Village of Kiryas Joel, 39 F. Supp. 2d 370, 383 (S.D.N.Y. 1999). The district court held that, because this claim "arise[s] out of the same nucleus of operative facts" as the earlier suit and should have been brought together with the prior action, Waldman is currently barred from seeking the relief he now requests. Id. at 379. We affirm.
 
 I. BACKGROUND
 
 2
 This case derives from an internal schism within the Hasidic Jewish community that makes up the bulk of Kiryas Joel. Waldman, a dissident within that religious community, accuses the Village of excessive entanglement with religion, arguing that the Village government is little more than an extension of the Congregation Yetev Lev ("Congregation"), the dominant religious body in the Village. The behavior Waldman alleges in his complaint is deeply troubling in that, if true, it describes a town in which public institutions are routinely being used as instruments of the dominant religious group and in which members of dissident groups are constantly subjected to threats and discrimination at the hands of their local government.
 
 
 3
 The present lawsuit does not, however, come to us without baggage. Waldman has been involved in two prior suits against the Village. In the first, filed in October 1995, Khal Charidim Kiryas Joel v. Village of Kiryas Joel, No. 95 Civ. 8378 (S.D.N.Y. Mar. 10, 1997) (Rakoff, J.) ("Khal Charidim"), Waldman's brother, two other individuals, and Khal Charidim, a group in which Waldman played a leadership role, sued the Village claiming discrimination in the enforcement of the zoning code. In Khal Charidim, a group of dissidents asserted that they had sought to use a building owned by one of the plaintiffs for religious services, and that the Village had fined the building's owner more than $25,000 for violating various zoning provisions that had never before been enforced in Kiryas Joel. The dissidents' suit alleged denials of equal protection, free exercise, and freedom of assembly under the First and Fourteenth Amendments of the Federal Constitution. The second suit was filed in January 1997 by Waldman, the Committee for the Well-Being of Kiryas Joel (a group led by Waldman), and two other individuals. That suit, Waldman v. Village of Kiryas Joel, No. 97 Civ. 74 (S.D.N.Y. Apr. 9, 1997) (Rakoff, J.) ("Waldman I"), claimed violations of the Establishment and Free Exercise Clauses of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Fair Housing Act as a result of discrimination by the Village in the provision of public housing.
 
 
 4
 Khal Charidim went to trial in March 1997. On the fifth day of the trial, the parties agreed to settle. One of the conditions of the settlement, however, was the dismissal with prejudice of Waldman I. Waldman agreed to the terms of the Khal Charidim settlement and both suits came to an end. Khal Charidim was terminated, with the district court exercising continuing jurisdiction to enforce the settlement terms, and Waldman I was dismissed with prejudice.
 
 
 5
 Waldman filed the instant suit in the Southern District of New York in October 1997. In it he sought a total dissolution of the Village. He also asked for damages and for an injunction against the location of the Village polling place on the property of the Congregation. The defendants moved for dismissal pursuant to Federal Rule of Civil Procedure 12(c) on the basis of res judicata. The district court granted that motion in part, finding that Khal Charidim and Waldman I each precluded Waldman from bringing his claim for the dissolution of the Village. The court, however, ultimately granted Waldman a permanent injunction against the location of the polling place for the Village on the property of the Congregation. Finally, the court dismissed without prejudice Waldman's action for damages (with the understanding that, if we reversed the district court on the issue of res judicata, the claim for damages would be reinstated, but that, if we affirmed, the dismissal without prejudice would be converted into dismissal with prejudice). On appeal, the only issue before us is whether Waldman's claim seeking the dissolution of the Village is barred by res judicata.
 
 II. DISCUSSION
 
 6
 "Res judicata . . . makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, [that] were or should have been adjudicated in the proceeding." 1B James Wm. Moore , Moore's Federal Practice 0.405[1], at III-7 (2d ed. 1996) (footnotes omitted) ("Moore's Federal Practice"). The district court held that Waldman should have brought this claim for the dissolution of the Village as part of the prior actions. It based this conclusion upon the preclusive effects of both Khal Charidim and Waldman I. In doing this, it specifically noted that Waldman I was, by itself, sufficient to bar Waldman's dissolution claim. See Waldman, 39 F. Supp. 2d at 381. Because we agree with the district court's assessment of Waldman I, we do not reach any of the issues concerning the possible preclusive effect of Khal Charidim.[1]
 
 
 7
 Waldman raises essentially two arguments against the position that his claim for dissolution of the Village should have been brought with Waldman I. First, he asserts that the current suit does not share a common nucleus of operative facts with the prior one. Second, he alleges that it would have been premature to request the dissolution of the Village in Waldman I in light of the facts that existed at the time.
 
 A. Common Nucleus of Operative Facts
 
 8
 In deciding whether a suit is barred by res judicata, "[i]t must first be determined that the second suit involves the same 'claim' - or 'nucleus of operative fact' - as the first suit." Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997) (quoting Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 583 (1st Cir. 1995)). In Interoceanica, we identified three indicia as being crucial to this determination. "To ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations . . . .'" Id. (quoting Restatement (Second) of Judgments 24(2) (1982)).
 
 
 9
 The district court found that Waldman's claim seeking the dissolution of the Village was based upon the same set of facts -- sufficiently related in time, space, origin, or motivation -- as Waldman I. It also concluded that Waldman's contentions that the Village "by its very existence" violates the Establishment Clause would have formed a convenient trial unit with the earlier action. Waldman argues that the district court erred, and that his present claim is based upon facts completely different from those upon which he relied in Waldman I. We agree with the district court.
 
 
 10
 In this case, Waldman asserts that the Village "was constituted and operates primarily to benefit a single religious sect." To support this statement, he points to a variety of events, almost all of which had occurred before the filing of Waldman I. Specifically, he alleges the following:
 
 
 11
 (1) The Village was created in 1977 to include only Satmar Hasidic residents.
 
 
 12
 (2) There has been a substantial overlap between the leadership in the Village and the Congregation.
 
 
 13
 (3) Dissidents have been expelled from the Congregation.
 
 
 14
 (4) Dissidents' children have been expelled from the parochial schools in the Village.
 
 
 15
 (5) Since 1989, prior approval by the Congregation has been required before new residents have been allowed to move into Kiryas Joel.
 
 
 16
 (6) Since 1989, a contribution to the Congregation has been required before the Village will issue any building permits.
 
 
 17
 (7) Dissidents have been denied access to public housing.
 
 
 18
 (8) Since 1989, the Village has allowed the Congregation to interfere with dissidents' voting rights (e.g., by locating the polling booth on Congregation property and interfering with Waldman's attempts to run for office).
 
 
 19
 (9) Yosef Hirsch was terminated as the Building Inspector and Constable and expelled from the Congregation after he reported voter fraud to the Orange County Board of Elections.
 
 
 20
 (10) In June 1997, solely to prevent a group of dissidents from demonstrating in front of the Rabbi's house, the Village passed an ordinance prohibiting people who did not live on the street where the head Rabbi lives from walking on that street.
 
 
 21
 (11) Village Mayor Abraham Wider stated under oath that the Village will not enforce state laws that conflict with Jewish law.
 
 
 22
 Waldman I sought to bar the Village from discriminating against religious dissidents in the provision of public housing allegedly in violation of the Free Exercise and Establishment Clauses, the Equal Protection Clause, and the Fair Housing Act. In that suit, the plaintiffs asked, inter alia, for a specific declaration that the Village violated the Free Exercise and Establishment Clauses of the Federal Constitution. In order to make out their case of religious discrimination and establishment violations, Waldman and the other plaintiffs in Waldman I alleged many of the same facts averred in the present suit:
 
 
 23
 (1) The Village was created in 1977 to include only Satmar Hasidic residents.
 
 
 24
 (2) There has been substantial overlap between the leadership in the Village and the Congregation.
 
 
 25
 (3) Dissidents have been expelled from the Congregation.
 
 
 26
 (4) Dissident's children have been expelled from the parochial schools in the Village.
 
 
 27
 (5) Since 1989, prior approval by the Congregation has been required before new residents have been allowed to move into Kiryas Joel.
 
 
 28
 (6) Since 1989, a contribution to the Congregation has been required before the Village will issue any building permits.
 
 
 29
 (7) Dissidents have been denied access to public housing.
 
 
 30
 As the district court noted, and as the above listing makes obvious, the present suit and Waldman I share the following factual allegations, which we will refer to hereinafter as the "overlapping facts":
 
 
 31
 (1) The Village was created in 1977 to include only Satmar Hasidic residents.
 
 
 32
 (2) There has been substantial overlap between the leadership in the Village and the Congregation.
 
 
 33
 (3) Dissidents have been expelled from the Congregation.
 
 
 34
 (4) Dissidents' children have been expelled from the parochial schools in the Village.
 
 
 35
 (5) Since 1989, prior approval by the Congregation has been required before new residents have been allowed to move into Kiryas Joel.
 
 
 36
 (6) Since 1989, a contribution to the Congregation has been required before the Village will issue any building permits.
 
 
 37
 (7) Dissidents have been denied access to public housing.
 
 
 38
 Indeed, the only facts asserted in the current suit that were not alleged in Waldman I are[2] :
 
 
 39
 (1) Village Mayor Abraham Weider stated under oath that the Village will not enforce state laws that conflict with Jewish law.
 
 
 40
 (2) There has been interference with dissidents' voting rights and with Waldman's efforts to run for office.[3]
 
 
 41
 (3) In June 1997, the Village passed an ordinance prohibiting people who did not live on the street where the head rabbi lives from walking on that street solely to prevent a group of dissidents from demonstrating in front of the Rabbi's house.
 
 
 42
 The "overlapping facts" would seem, on their face, to constitute a common nucleus of ongoing and pervasive entanglement between church and state in Kiryas Joel. Waldman, nevertheless, argues that no such common nucleus exists because Waldman I focused solely on Village discrimination in the provision of public housing. The overlapping facts, he asserts, were not essential to his earlier action, which was much narrower in its legal theory. This argument is unavailing.
 
 
 43
 To the extent that it is premised on the scope of the legal claims asserted in the earlier suit, the contention is foreclosed by the well-established rule that a plaintiff cannot avoid the effects of res judicata by "splitting" his claim into various suits, based on different legal theories (with different evidence "necessary" to each suit). See Woods v. Dunlop Tire Corp., 972 F.2d 36, 39 (2d Cir. 1992) ("It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to form her complaint."); 1B Moore's Federal Practice 0.410[2]. In other words, res judicata still applies, regardless of whether in his prior suit Waldman chose to focus on the issue of discrimination and not, as now, on the alleged invalidity of the Village itself. Cf. Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869, 875 (2d Cir. 1991) (finding that a claim for tortious infliction of emotional distress against creditors should have been brought as part of a prior bankruptcy proceeding and was therefore barred by res judicata). As a result our cases consistently hold that the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that "the facts essential to the second were [already] present in the first." Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997) (emphasis added) (quoting Interoceanica, 107 F.3d at 91).
 
 
 44
 Even if this were not the law, it is patent, despite Waldman's contentions, that the overlapping facts were directly relevant to the earlier suit and were not included in that case only as background information. Thus, Waldman's argument is belied by the pleadings and trial strategy adopted by counsel for the plaintiffs in that action. In Waldman I, the plaintiffs sought a general declaration that the Village was violating the Free Exercise and Establishment Clauses, hence it is difficult to understand how the overlapping facts were not crucially relevant to Waldman I. To the contrary, we believe it to be unmistakeable that in Waldman I, the plaintiffs sought to make out their various claims precisely by alleging the very troubling overlapping facts that form the basis of the current action.
 
 
 45
 Perhaps recognizing the weakness of his "different legal theories" argument, Waldman maintains that the overlapping facts are not, in any event, sufficiently related to each other to constitute a single "transaction or connected series of transactions." See Interoceanica, 107 F.3d at 91 (internal quotation marks omitted). In the absence of such an internal coherence, a prior action based upon one part of the overlapping facts would not properly act as a bar to subsequent action based upon another part of the overlapping facts. The Restatement (Second) of Judgments, for example, distinguishes between (a) a series of events in which a person trespasses on the property of another every day for several days -- which it states constitutes a single transaction or series of related transactions -- and (b) a situation in which a creditor, having gone to collect a debt, becomes, while doing so, the victim of an unprovoked assault by the debtor -- which it asserts constitutes two separate transactions (one creating a cause of action for debt and another for assault). See Restatement (Second) of Judgments 24 cmt. d & illus. 7 (1982). In the former situation, the restaters say, a suit for trespass precludes a subsequent action for trespass as to all the instances of trespass preceding the institution of the original suit. See id.; see also SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1464 (2d Cir. 1996) ("[W]hen a contract was to be performed over a period of time and one party has sued for a breach but has not repudiated the contract, res judicata will preclude the party's subsequent suit for any claim of breach that had occured prior to the first breach-of-contract suit . . . ."). By contrast, in the latter situation, they note, a suit to collect the debt does not bar a subsequent suit on the assault claim. See Restatement (Second) of Judgments 24 illus. 7 (1982).
 
 
 46
 But it is clear from the Waldman I complaint, which alleged all of the overlapping facts and -- in addition to its claim for housing discrimination -- sought a general declaration that the Village's actions violated the Establishment and Free Exercise Clauses, that even Waldman, properly, viewed the various components of the overlapping facts as part of the same pattern of behavior by the Village/Congregation. As the district court put it, all of the overlapping facts are expressions of "the Congregation's alleged dominance of the Village, its politics and municipal services." Thus, as a group, they are more like the situation in which a person repeatedly trespasses on the same land (albeit in different ways and at different times) than they are like the situation in which a creditor goes to a debtor's home to collect on a debt and is punched in the nose.
 
 
 47
 Focusing directly on the three indicia stated in Interoceanica reinforces this conclusion. First, the overlapping facts are "related in time, space, origin, or motivation." See Interoceanica, 107 F.3d at 90 (internal quotation marks omitted). Here, all of these facts derive ultimately from the same origin or motivation: the alleged entanglement of church and state in Kiryas Joel. Second, the suits would have formed a convenient trial unit since both involve substantially the same incidents evincing the same relationships between church and state in the Village and, with minor exceptions, involve the same witnesses and evidence.[4] Finally, it would seem clear that treating the various overlapping facts as a single transaction or series of related transactions would have "conform[ed] to the parties' expectations." Id. at 90 (internal quotation marks omitted). For the record in both cases shows that Waldman viewed all of the overlapping facts as arising from the same polluted spring of pervasive entanglement.
 
 B. New Facts
 
 48
 Waldman nevertheless argues that, even if there were a substantial nucleus of overlapping facts, he could not have brought his current claim as part of Waldman I because some facts necessary to its proof did not exist until after Waldman I was filed. In particular, Waldman points to the admission at the Khal Charidim trial by Abraham Weider, the Village mayor, that the Village does not and will not enforce State laws that conflict with religious law. Prior to this admission, Waldman asserts, a claim seeking the dissolution of the Village would have been premature. Waldman I, he contends, was brought as a "garden-variety" discrimination case, for the facts available to him at the time he brought that suit did not demonstrate such a pervasive entanglement with religion as would justify the dissolution of the Village. Once Weider made his statement, however, a broad-based claim became viable.
 
 
 49
 In one sense, this assertion is just another way of contesting the existence of a common nucleus of operative facts or of questioning whether, as we asked in Interoceanica, the facts essential to the second claim were already present in the first suit. The argument, moreover, seems disingenuous. The factual allegations in the earlier suits paint a clear picture of a village in which there was widespread entanglement -- if not virtual identity -- between church and state. And Weider's admission added little to this picture. Indeed, Waldman admits as much in his brief, when he states that "the district court may order the dissolution of the Village solely on account of the gerrymandered boundaries that in 1977 excluded the properties of all non-Satmars." Waldman cannot have it both ways. He cannot at once assert that his claim for the dissolution of the Village only became viable in 1997 (when Weider admitted that the Village would not enforce state laws contrary to Jewish law), and also claim that the Village may be dissolved solely on the basis of facts that have existed for over two decades. More importantly, the latter position seems to be the correct one, and the new facts asserted in Waldman's complaint do not create a "new" cause of action that did not exist when the prior suits were brought.
 
 
 50
 In a variation on his argument that this action would have been premature before the occurrence of events that only took place after the filing of the prior suits, Waldman claims that this suit is really "based upon" things that have happened since the filing of the prior suits. In support of this contention, he points to several "new" facts: (1) Weider's aforementioned admission; (2) the dispute over a Village ordinance barring anyone who does not live on the head rabbi's street from walking there (apparently, this ordinance was passed to prevent a group of dissidents from holding a planned protest on the street); and (3) Village officials' obstruction of Waldman's 1997 candidacy for public office and the continued location of the polling place in the Congregation's synagogue.
 
 
 51
 It is true that res judicata will not bar a suit based upon legally significant acts occurring after the filing of a prior suit that was itself based upon earlier acts. See First Jersey Sec., 101 F.3d at 1464 (finding that res judicata did not bar a suit based upon fraudulent acts occurring after the filing of a previous suit, even though such acts were part of the same pattern of fraudulent acts that had been the subject of the earlier suit); NLRB v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983). Thus, in Interoceanica, we allowed a shipping company to sue for a declaration of its rights with respect to any and all voyages occurring after the original ten that were the subject of an earlier suit by the defendants. See Interoceanica, 107 F.3d at 91. And, since the statute at issue in Interoceanica gave the defendants the legal right to seek damages for each voyage undertaken by the plaintiffs, we held that each new voyage created a fresh cause of action in which Interoceanica's Commerce Clause based damage claims could be renewed (at least with respect to that particular voyage).
 
 
 52
 Similarly, we need not decide whether, under Interoceanica, res judicata would bar Waldman from instituting a new suit to prevent enforcement of the Village ordinance passed to block religious dissidents from marching on the Rabbi's street, just as it did not preclude him from seeking, as he has successfully done in this case, an injunction prohibiting the location of the polling place in the Congregation's place of worship. And we need not decide whether res judicata would keep him from obtaining a similar injunction protecting his candidacy for public office from the Congregation's interference, or from suing to require the Village to enforce state laws if and when such refusals (like those threatened by Weider in his statement at the Khal Charidim trial) actually occurred or became sufficiently proximate to support an injunction.
 
 
 53
 As the situation now stands, however, it is simply not plausible to characterize Waldman's claim as one based in any significant way upon the post-Waldman I facts. The new allegations made in the present complaint do not, either by themselves or to any degree not already demonstrated by the overlapping facts, establish the sort of pervasive and otherwise irremediable entanglement between church and state that would justify a drastic remedy like the dissolution of the Village. They are instead, nothing more than additional instances of what was previously asserted. We conclude that, in seeking the dissolution of Kiryas Joel, Waldman has based his action principally upon the common nucleus of operative facts shared with Waldman I.
 
 
 54
 All this is not to say that a series of future actions evincing an enduring and all-encompassing domination of the Village government by the Congregation could not at some point suffice to create a new cause of action for the dissolution of the Village. We do not doubt that even the mere accumulation of facts of the same sort can, if pervasive enough, turn a difference of degree into a difference in kind. Thus, a suit for sexual harassment might bar a later suit (based on substantially the same facts) for a hostile work environment. And the occurrence of another like incident or two would probably not be enough to changematters. Yet, at some point, repetition of the same or similar acts may well give rise to a new claim, and the latter action -- based, as it would be, primarily upon a cumulation of events occurring after the first suit -- would not then be precluded by res judicata. Cf. Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998) (indicating that the res judicata effects of a prior suit for race and sex discrimination did not preclude a court from entertaining a subsequent hostile work environment claim to the extent that the latter claim was based upon events occurring after the initial suit). But Waldman cannot use the mere inclusion of a few post-Waldman I Village acts, themselves satisfactorily remediable through appropriately tailored relief, to resurrect a claim, grounded almost entirely upon pre-1997 events, that the Village has "since its inception," Complaint at 1, existed for the benefit of a single religious community and must therefore be dissolved.
 
 
 55
 * * * *
 
 
 56
 Having examined all of Waldman's arguments and found them to be without merit, we AFFIRM the judgment of the district court.
 
 
 
 Notes:
 
 
 [1]
 We therefore express no opinion on the district court's ruling that Waldman, although not a named plaintiff, was in privity with the named plaintiffs in Khal Charidim and is therefore bound by its results.
 
 
 [2]
 The Yosef Hirsch incident alleged in the present complaint appears to have occurred well before the filing of Waldman I. Moreover, appellant does not rely on the Hirsch allegation to advance any of his res judicata arguments. We will therefore not consider it for the purposes of our decision.
 
 
 [3]
 Most of the voting incidents alleged in the complaint happened prior to Waldman I, although some of them occurred subsequently.
 
 
 [4]
 Waldman argues that the relief requested in Waldman I was inconsistent with that sought in his present suit, thus preventing him (or the other plaintiffs) from bringing a claim for the dissolution of the Village in the earlier action. But Waldman does not allege that he was procedurally barred from seeking the relief he now demands in those earlier suits. Such procedural impossibility, however, is generally viewed as the necessary predicate for making an exception to res judicata. See Restatement (Second) of Judgments 25 cmt. f ("In a modern system of procedure it is ordinarily open to the plaintiff to pursue in one action all the possible remedies whether or not consistent, whether alternative or cumulative, and whether of the types historically called legal or equitable. Therefore it is fair to hold that after judgment for or against the plaintiff, the claim is ordinarily exhausted so that the plaintiff is precluded from seeking any other remedies deriving from the same grouping of facts.").