In re Fabio **RODRIQUEZ** and Carmen L. Rodriquez, Debtors.

**Fabio Rodriquez and Carmen L. Rodriquez, Movants,**

v.

**Global Air Parts, LLC, and The LFP Limited Partnership, Respondents.**

No. 04–31944 (LMW).

United States Bankruptcy Court, D. Connecticut.

July 5, 2005.

Marjorie R. Gruszkiewicz, Esq., Law Offices of Frederick A. Dlugokecki, Naugatuck, CT, for the Debtors.

Roger Lee Crossland, Esq., Shepro & Blake, LLC, Stratford, CT, for the Respondents.

Molly T. Whiton, Esq., Hartford, CT, Chapter 13 Trustee.

## MEMORANDUM OF DECISION RE: MOTION TO AVOID JUDICIAL LIENS IMPAIRING EXEMPTION

LORRAINE MURPHY WEIL,
Bankruptcy Judge.

The matter before the court is that certain Motion To Avoid Judicial Liens Impairing Exemption (Chapter 13 Case Doc. I.D. No. 45, the "Second Motion")[1] pursuant to Bankruptcy Code § 522(f)(1) filed by the above-referenced husband debtor (the "Debtor").[2] The Respondents have filed an objection (Chapter 13 Case Doc. I.D. No. 50 (as supplemented by Chapter 13 Case Doc. I.D. No. 55), the "Second Objection") asserting, among other things, that prosecution of the Second Motion is precluded as a result of an order (Chapter 7 Case Doc. I.D. No. 41, the "Prior Order") issued by this court in the First Case. For the reasons stated below, the court agrees that the Second Motion must be denied on the grounds of *res judicata* (claim preclusion).

## I. FACTS[3]

To understand the posture of this matter, a somewhat lengthy recitation of the

---

**1.** References herein to the docket of this chapter 13 case are in the following form: "Chapter 13 Case Doc. I.D. No. ___." References herein to the docket of Chapter 7 Case No. 03–34678, a prior-pending chapter 7 case (the "First Case") in respect of these debtors, are in the following form: "Chapter 7 Case Doc. I.D. No. ___."

**2.** For purposes of simplicity and because it makes no difference to the result, this opinion will speak as if the Debtor were the sole debtor in this chapter 13 case and in the First Case. For the same reason, the respondents (the "Respondents") herein will be treated in this opinion as if they were one entity.

**3.** The following facts have been taken from the record of this chapter 13 case and the First Case.

history of both this case and the First Case is necessary.

## A. Relevant Events Before the Commencement of This Case

The Debtor commenced the First Case by petition filed on September 18, 2003. (*See* Chapter 7 Case Doc. I.D. No. 1.) The schedules filed with that petition listed the following (among other assets and liabilities): an interest in a certain residential condominium unit located in Naugatuck, Connecticut (the "Property") with a stated value of $85,000.00 (*see id.* ("Schedule A. Real Property")); a claimed homestead exemption in respect of the Property under Connecticut law (*see id.* ("Schedule C. Property Claimed as Exempt")); a mortgage (the "Mortgage") in respect of the Property in the stated amount of $13,000.00 (*see id.* ("Schedule D. Creditors Holding Secured Claims")); and a judgment lien (the "Judgment Lien") in respect of the Property held by the Respondents in the stated amount of $25,345.59 (*see id.*). The chapter 7 trustee filed a "Report of No Distribution" on October 21, 2003. (*See* Chapter 7 Case Doc. I.D. No. 10.) On the same date, the court entered an order granting the holder of the Mortgage relief from stay to foreclose. (*See* Chapter 7 Case Doc. I.D. No. 11.)

On November 25, 2003, the Respondents timely filed a complaint under Bankruptcy Code § 523(a) to determine the dischargeability of the judgment debt (the "Judgment Debt") underlying the Judgment Lien.[4] (*See* A.P. Doc. I.D. No. 1.) The Debtor received his chapter 7 discharge on January 8, 2004. (*See* Chapter 7 Case Doc. I.D. No. 14.) The Debtor filed a motion (Chapter 7 Case Doc. I.D. No. 16, the "First Motion") to avoid the Judgment Lien (and another judgment lien (the "Other Lien") in respect of the Property in the stated amount of $416.000) on February 25, 2004; the Respondents filed an objection thereto (Chapter 7 Case Doc. I.D. No. 19) on March 5, 2004.[5] On April 20, 2004, a hearing on the First Motion and the First Objection was scheduled for May 24, 2004. As of April 23, 2004 the First Case still was open and pending in this court.

## B. Relevant Events On and After the Commencement Date of This Case

The Debtor commenced this chapter 13 case by petition filed on April 23, 2004. (*See* Chapter 13 Case Doc. I.D. No. 2.) The schedules filed with that petition listed the following (among other assets and liabilities): the Property with a stated value of $110,000.00 (*see* Chapter 13 Case Doc. I.D. No. 2 ("Schedule A. Real Property")); a claimed homestead exemption under Connecticut law with respect to the Property (*see id.* ("Schedule C. Property Claimed As Exempt")); the Mortgage in the stated amount of $43,423.76 (*see id.* ("Schedule D. Creditors Holding Secured Claims")); the Judgment Lien in the stated amount of $25,345.59 (*see id.*); and the Other Lien in the stated amount of $416.00 (*see id.*).[6]

---

4. The filing of that complaint commenced Adv. Pro. No. 03–3201 (the "Adversary Proceeding"). References herein to the docket of the Adversary Proceeding are in the following form: "A.P. Doc. I.D. No. ____."

5. The Respondents filed a "Supplemental Objection" (Chapter 7 Case Doc. I.D. No. 23) on April 14, 2004. Document Nos. 19 and 23 are hereafter referred to collectively as the "First Objection."

6. The chapter 13 schedules noted that there was a "[p]ending 522(f) motion [in the First Case]" with respect to both judgment liens. (*See id.*) The Debtor amended the chapter 13 schedules on November 15, 2004 (*see* Chapter 13 Case Doc. I.D. No. 35); those amendments are not relevant.

The Debtor filed a proposed Chapter 13 Plan on May 13, 2004. (*See* Chapter 13 Case Doc. I.D. No. 8, the "Plan.") Among other things, the Plan proposed that the Debtor retain the Property and further proposed: to make monthly payments to the chapter 13 trustee in the amount of $538.00 for sixty months; to cure and reinstate a Mortgage arrearage in the stated amount of $25,954.00 over the same term; and to treat both the Judgment Lien and the Other Lien as general unsecured claims pursuant to Bankruptcy Code § 522(f). The Plan proposed to pay nothing to general unsecured creditors. (*See id.*) On May 17, 2004, the Respondents filed an objection to Plan confirmation. (*See* Chapter 13 Case Doc. I.D. No. 10.)

On May 12, 2004, the Debtor marked the First Motion "off . . . with the right to reclaim" in the First Case. (*See* Chapter 7 Case Docket Entry.) At the request of the Debtor, on June 21, 2004 the First Motion was again set down for a hearing in the First Case. (*See* Chapter 7 Case Doc. I.D. No. 30.)[7] On July 14, 2004, this court issued in this case that certain Order To Show Cause Why Simultaneously Pending Chapter 13 Case Should Not Be Dismissed. (*See* Chapter 13 Case Doc. I.D. No. 21.) On September 2, 2004, this court issued a Brief Memorandum and Order Partially Determining Issues Raised on Order To Show Cause and Continuing Hearing on Order To Show Cause (*see* Chapter 13 Case Doc. I.D. No. 28) holding that the fact that the First Case and this case were pending simultaneously did not *per se* mandate the dismissal of this case and ordering a further hearing on the issue of dismissal.[8] On October 20, 2004, this court entered judgment against the Debtor in the Adversary Proceeding declaring the Judgment Debt not to have been discharged in the First Case pursuant to Bankruptcy Code § 523(a)(6). (*See* A.P. Doc. I.D. No 36, the "Nondischargeability Judgment").[9] At the October 19, 2004 hearing on the First Motion and the First Objection the Respondents conceded that, in light of *In re Ash, supra,* the objection stated in the First Objection was not meritorious, but expressed an intent to put the Debtor to his proof with respect to the First Motion. Accordingly, when the Debtor attempted to prove his case, e.g., the outstanding balance of the Mortgage at the relevant time, by hearsay means the Respondents objected, and that objection was sustained. At that point, and because the Respondents had not given the Debtor notice prior to the hearing that the outstanding balance of the Mortgage would be contested, the court indicated that it would continue the hearing to give the Debtor an opportunity to produce admissible proof of the amount of the Mortgage. Because their witness was present at the hearing, the Respondents were permitted to introduce the testimony of Mr. Scott Corner, a

7. That hearing was continued to October 19, 2004. (*See* Chapter 7 Case Doc. I.D. No. 32.)

8. That hearing has been continued to the hearing on plan confirmation.

9. Entry of the Nondischargeability Judgment had no effect on either the First Motion or the Second Motion. *See In re Ash,* 166 B.R. 202 (Bankr.D.Conn.1994) (Krechevsky, B.J.). The First Objection took a contrary position. Notwithstanding the Nondischargeability Judgment, the Judgment Debt could be discharged as an *in personam* liability of the Debtor pursuant to a confirmed and consummated chapter 13 plan. *See* 11 U.S.C. § 1328(a) (effect of chapter 13 discharge). However, to the extent that the Judgment Lien constitutes an allowed secured claim (i.e., remains unavoided), the Debtor may not confirm a chapter 13 plan over the Respondents' objection if that plan proposes that the Debtor will retain the Property but does not propose to satisfy the Judgment Lien. *See* 11 U.S.C. § 1325(a)(5) (requirements for confirmation of a plan with respect to allowed secured claims).

licensed appraiser, on the issue of the fair market value of the Property. Mr. Corner testified that the fair market value of the property as of October 5, 2004 was $115,000.00. The court continued the hearing to November 8, 2004.[10]

· A continued evidentiary hearing was held on the First Motion and the First Objection on November 8, 2004.[11] The Debtor introduced the testimony of Douglas A. Lombert, a licensed appraiser, and testimony of the Debtor himself. The Debtor also attempted to introduce certain documentary evidence.[12] The Respondents did not introduce any (further) evidence. At the conclusion of evidentiary proceedings and summations by counsel, the court took the matter under advisement. On December 2, 2004, the court announced its decision on the First Motion and the First Objection from the bench at a continued hearing.[13] On December 3, 2004, the court issued the Prior Order. The Prior Order avoided the Judgment Lien "to the extent (and only to the extent) that the amount of such lien exceeds $23,000.00" and avoided the Other Lien in its entirety.[14] For reasons discussed below, the balance of the Mortgage was not included in the Bankruptcy Code § 522(f)(2)(A) "impairment" calculation (an "Impairment Calculation") which was the basis for the Prior Order. (*See* Prior Order ¶ 3.) [15]

The Debtor filed a proposed First Amended Chapter 13 Plan on November 15, 2004. (*See* Chapter 13 Case Doc. I.D. No. 36, the "Amended Plan.") The Amended Plan made the following relevant changes to the Plan: reduced the amount of monthly plan payments to $520.27; restated the name of the holder of the Mortgage and reduced the amount of the Mortgage delinquency to be cured to $17,956.00; noted the issuance of the Nondischargeability Judgment (which had become final); and proposed to pay general

10. The court brought to the parties' attention at the October 19, 2004 hearing that the relevant date for determining the Mortgage balance and the value of the Property might be the commencement date of the First Case.

11. A transcript (the "November Transcript") of that hearing appears in the record of the First Case as Chapter 7 Case Doc. I.D. No. 34.

12. The Respondents objected to the admission of both the Debtor's testimony and the documentary evidence.

13. A transcript (the "December Transcript") of the court's decision appears in the record of the First Case as Chapter 7 Case Doc. I.D. No. 44.

14. The Prior Order also found the value of the Property to have been $98,000.00 as of the commencement of the First Case. (*See* Prior Order ¶ 1.) The court also entered a marginal order sustaining the First Objection in part and overruling it in part in a manner consistent with the Prior Order. (*See* Chapter 7 Case Doc. I.D. No. 40.)

15. The Prior Order has become final. Bankruptcy Code § 522(f) provides in relevant part as follows:

> (1) Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> (A) a judicial lien . . . .
>
> . . . . .
>
> (2) (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C.A. § 522(f) (West 2005).

unsecured creditors a dividend of not less than forty (40%) percent. (*See id.*)[16]

The Debtor filed the Second Motion in this case on December 28, 2004. The Second Motion alleges that the Property was worth $107,000.00 as of the commencement of this case and includes an alleged Mortgage balance of $34,179.76 in its Impairment Calculation. (*See* Second Motion at 2.) The Respondents filed the Second Objection on January 4, 2005. The Second Objection raised, among other things, the *res judicata* issue referred to above. The court deemed it appropriate to consider the matters raised in the Second Objection prior to setting the Second Motion down for an evidentiary hearing. At a hearing held on February 3, 2005, the court set a briefing schedule with respect to those matters.[17] Those matters have been fully briefed and now are ripe for decision.

## II. *THE DECEMBER 2, 2004 DECISION*

In its decision, the court held that the relevant date for determining Property value and lien (including Mortgage) balances was the commencement date of the First Case. (*See* December Transcript at 10, line 25—11, line 20.) The court further ruled (in relevant part) as follows:

As noted above, the effective date for determining the [fair market value] of the [P]roperty is the [First Case] petition date. Because the [R]espondent's [sic] appraisal is as of a date substantially later, the court deems the [R]espondent's [sic] appraisal to be irrelevant. On the other hand, the [D]ebtor's appraisal is as of the petition date and is otherwise persuasive. Accordingly this court finds the value of the property for Section 522(f) purposes to be $98,000.00.

Because the value of the [P]roperty exceeds the statutory amount of the exemption, that is $75,000.00, by almost the entire amount of the [J]udgment [L]ien, it is the [D]ebtor's burden to establish the amount of the [M]ortgage as of the petition date, [sic] otherwise the [J]udgment [L]ien is avoidable only to the extent that it exceeded $23,000.00. $75,000.00 plus $23,000.00 equals $98,000.00, the threshold of impairment if there are no senior liens . . . .

The [D]ebtor[ ] failed to . . . carry . . . [his] burden of proof at either the . . . [October] hearing or . . . [the November] hearing.

[The Debtor's] Trial Exhibit 1 purports to establish the amount of the Mortgage as of February the 9th, 2004. Accordingly, [R]espondent's [sic] objection to Trial Exhibit 1 is sustained on the grounds of irrelevancy.

At the . . . [November] hearing . . . [the Debtor] testified that the amount of the mortgage was . . . "between $34,000.00 and $35,000.00." . . . However, a review of . . . [the Debtor's] testimony . . . [supports] the conclusion that he arrived at that figure by verifying the calculations set forth in Trial Exhibit 1 and the . . . [chapter 13 proof of claim filed for the holders of the Mortgage (the "POC")]. . . .

As noted above, Trial Exhibit 1 speaks as of February the 9th, 2004, and the POC speaks as of approximately April the 23rd, 2004. Both dates are substantially later than the [First Case] petition date. Accordingly, the court is not persuaded that the Debtor[ ] . . .

---

16. The Respondents filed an objection and an "Opposition Brief" in respect of the Amended Plan on November 29, 2004. (*See* Chapter 13 Doc. I.D. Nos. 37, 38.)

17. The First Case was closed by the Clerk's Office on the same day. (*See* Chapter 7 Case Docket Entry.)

[has] established the amount of the [M]ortgage as of the [First Case] petition date.

.   .   .   .   .

... For the reasons stated above an order will enter ... avoiding the [J]udgment [L]ien, but only to the extent that the [J]udgment [L]ien exceeds $23,000.00 ....

(December Transcript at 11, line 22—13, line 19.) [18]

## III. ANALYSIS

### A. Res Judicata

■ The doctrine of *res judicata* bars re-litigation ... of ... those claims which were brought in a prior proceeding ... [and] of any other admissible matter which could have been brought, but wasn't.

The test for res judicata used in this Circuit also requires that the same parties (or their privies) be litigating the same cause of action .... [T]he test for deciding sameness of claims requires that the same transaction, evidence, and factual issues be involved. Also dispositive to a finding of preclusive effect, is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action.

*Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 873–74 (2d Cir. 1991) (internal quotation marks, citations and footnote omitted). For the doctrine of

*res judicata* to apply, the prior judgment must have been a final judgment on the merits, rendered by a court of competent jurisdiction. *Id.* at 872. Final orders of the bankruptcy court are within the purview of the doctrine. *Id.* at 872–73.

■ Sameness of evidence and factual issues does not require an exact sameness; rather *substantial* sameness is required. *Estate of Young v. Williams*, 810 F.2d 363, 365 (2d Cir.1987) (citing cases); *Berlitz Schools of Languages of America, Inc. v. Everest House*, 619 F.2d 211 (2d Cir. 1980).[19] *See also Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) ("In deciding whether a suit is barred by res judicata, it must first be determined that the second suit involves the same claim—or nucleus of operative fact—as the first suit." (internal quotation marks omitted)). The Second Circuit has identified three other factors as "crucial" to the "sameness of claims" determination:

"whether the underlying facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations ...."

*Waldman*, 207 F.3d at 108 (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86 (2d Cir.1997) (internal quotation marks omitted)).

### B. Application of Law to Facts

■ Three of the *Sure–Snap* factors are easily disposed of here. It is uncontested that the Prior Order is a final order issued

---

**18.** The Respondents' objection to admission of the Debtor's testimony as a sanction for a discovery violation was overruled. (*See id* at 13, lines 8–9.)

**19.**

[I]t is apparent that there was no mechanical formula to be applied in determining whether two claims are truly duplicative. Rather, the determination hinges upon the

factual predicate of the ... claims asserted. Thus, whatever legal theory is advanced, when the factual predicate upon which claims are based are *substantially identical*, the claims are deemed to be duplicative for purposes of *res judicata*.

*Id.* at 215 (internal quotation marks and citation omitted) (emphasis added).

by a court of competent jurisdiction. The chapter 13 Debtor here is either the same person as the chapter 7 Debtor or in privity with him for preclusion purposes. *Cf. In re Wurster,* No. 98–5042, 1999 WL 601128, at *4 (E.D.Pa. Aug. 10, 1999) (chapter 13 debtor was either the same person as chapter 7 debtor or in privity with him for collateral estoppel (issue preclusion) purposes). Finally, with respect to impairment of rights, the Prior Order left the Respondents with a Judgment Lien in the amount of $23,000.00. If the Debtor were to prevail on the Second Motion, that lien would be avoided. Accordingly, the Respondents' rights under the Prior Order would be impaired if the Debtor were to prevail here.

Moreover, the circumstances presented here satisfy any formulation of the "sameness of claims" test. The Second Motion involves the same Property, the same Mortgage and the same Judgment Lien. That the First Motion was filed in a chapter 7 case and the Second Motion was filed in a subsequent chapter 13 case is irrelevant because the chapter of the underlying bankruptcy case does not alter the necessary elements of a Section 522(f) avoidance action. *See* 11 U.S.C. § 103(a) ("[C]hapter ... 5 of this title appl[ies] in a case under chapter 7 ... or [chapter] 13 of this title."). *Cf. Wurster, supra.* Under the circumstances presented here, the fact that the date for determining the balance of the Mortgage and the value of the Property with respect to the Second Motion is the commencement date of this chapter 13 case rather than the commencement date of the First Case does not change the result. It is true that the Second Motion alleges a different (higher) value for the Property as of the commencement of this case than that found by this court in the Prior Order. If the Second Motion alleged

a lower value for the Property, that might be material because it would aid the Debtor in obtaining a more favorable Impairment Calculation. However, a higher value does not aid the Debtor in obtaining a more favorable Impairment Calculation and thus is not material.[20] With respect to the alleged balance of the Mortgage as of the commencement of this case (i.e., $34,179.76), that amount is not materially different from the Mortgage balance which the Debtor unsuccessfully attempted to prove at the November 8, 2004 hearing. *See* November Transcript at 35, line 18 ("And the total amount [of the Mortgage balance] is between 34 [thousand] and 35 [thousand] ...." (testimony of the Debtor)). Immaterial factual differences do not remove a claim from the purview of *res judicata. Cf. Waldman,* 207 F.3d at 113 ("The new allegations made in the present complaint do not, either by themselves or to any degree not already demonstrated by the overlapping facts, establish the sort of pervasive and otherwise irremediable entanglement between church and state that would justify a drastic remedy like the dissolution of the Village. They are instead, [sic] nothing more than additional instances of what was previously asserted.").

It is telling that the Debtor filed the Second Motion shortly after he failed to prevail on the First Motion. Under the circumstances presented here, the Respondents could have reasonably believed that they would not be required to relitigate the First Motion and the Debtor should have anticipated that he would be precluded from compelling such a relitigation. *Cf. Wurster, supra* (similar result on a collateral estoppel theory when the debtor had stipulated in a prior chapter 7 case to

---

**20.** The absence of the $416.00 Other Lien    from the Second Motion also is immaterial.

allowance of the subject lien in a set amount).

## IV. *CONCLUSION*

For the reasons discussed above, an order will issue denying the Second Motion and sustaining the Second Objection.