**JOHN STREET LEASEHOLD, LLC, Plaintiff,**

v.

**CAPITAL MANAGEMENT RESOURCES, L.P., et al., Defendants.**

No. 98 Civ.1965(JGK).

United States District Court, S.D. New York.

March 29, 2001.

---

532

**OPINION AND ORDER**

KOELTL, District Judge.

This action arises out of a syndicated loan in the amount of $20,300,000.00 (the "Loan") secured by a mortgage on a property known as 127 John Street in New York City (the "Mortgage"). The plaintiff, John Street Leasehold, LLC ("John Street"), alleges that the Federal Deposit Insurance Corporation, as receiver for the lead lender American Savings Bank ("FDIC/R"), together with the FDIC in its corporate capacity ("FDIC/C"), and employees and agents of the FDIC tortiously acted in bad faith and deprived the plaintiff of its rights by improperly accelerating the foreclosure of the Mortgage.

This is the second action in this Court in which the plaintiff has sought damages arising out of the allegedly wrongful foreclosure of its interest in 127 John Street. In the first action, the plaintiff alleged that the FDIC/R and the FDIC/C orally agreed to waive a provision in the Mortgage Extension, Consolidation and Modification Agreement (the "Mortgage Agreement") that permitted the participating institutions to require the prepayment of the outstanding balance of the Mortgage at any time after December 20, 1992 with 180 days' written notice (the "Call Provision"), that they then breached that oral agreement, and foreclosed on the Mortgage. This Court granted summary judgment dismissing all of the plaintiff's claims. *John Street Leasehold, LLC v. Federal Deposit Ins. Corp.*, No. 95 Civ. 10174, 1996 WL 737196 (S.D.N.Y. Dec.24, 1996); *John Street Leasehold, LLC v. Federal Deposit Ins. Corp.*, No. 95 Civ. 10174, 1998 WL 411328 (S.D.N.Y. July 22, 1998). The Court of Appeals affirmed the judgment of dismissal. *John Street Leasehold, LLC v. Federal Deposit Ins. Corp.*, 196 F.3d 379 (2d Cir.1999) (per curiam).

All defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56 primarily on the ground that all of the plain-

tiff's claims are barred by res judicata or claim preclusion. Various defendants also move to dismiss individual claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction or Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, the defendants' motions are granted in their entirety.

## I.

### A.

#### 1.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). "In

considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

On a motion for summary judgment, once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial. *See* Fed. R.Civ.P. 56(e). The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *see Scotto v. Almenas,* 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases); *Wyler v. United States,* 725 F.2d 156, 160 (2d Cir.1983).

#### 2.

With respect to the motions to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), because all of the parties have submitted extensive evidentiary materials, the defendants have moved for summary judgment, and the plaintiff has been afforded the opportunity to submit any evidence in response to the motions for summary judgment, the motions to dismiss will also be treated as motions for summary judgment. *See Elgendy v. City of New York,* No. 99 Civ. 5196, 2000 WL 1119080, at *1 (S.D.N.Y. Aug. 7, 2000). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the court may consider matters outside the pleadings, such as affidavits, documents, and testimony. *See, e.g., Antares Aircraft v. Fed. Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991); *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986). Thus, the standard used to evaluate a Rule

12(b)(1) claim is similar to that for summary judgment under Fed.R.Civ.P. 56. *See Kamen,* 791 F.2d at 1011. The plaintiff has the ultimate burden of proving the Court's jurisdiction by a preponderance of the evidence. *See Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996); *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983); *see also Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991) (when subject matter jurisdiction is challenged under Rule 12, plaintiff must bear burden of persuasion); *Martin v. Reno,* No. 96 Civ. 7646, 1999 WL 527932 (S.D.N.Y. July 22, 1999).

### B.

#### 1.

The defendants have filed statements of undisputed facts as required by Local Civil Rule 56.1(a) and the plaintiff has not filed a counter-statement of material facts as to which it is contended there is a genuine issue to be tried as required by Local Civil Rule 56.1(b). The plaintiff's failure to respond to the defendants' 56.1 statements constitutes an admission of the facts contained in those statements. *See* Local Civil Rule 56.1(c); *Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998); *United States v. All Right, Title and Interest in Real Property and Appurtenances,* 77

---

**1.** One 56.1 Statement was submitted on behalf of defendants Capital Management Resources, L.P., CMR Corp., Old Compton L.P. f/k/a Aldrich, Eastman & Waltch, L.P., Old Compton Holdings L.P. f/k/a AEW Holdings, L.P., Old Compton Inc. f/k/a Aldrich, Eastman & Waltch, Inc., J. Grant Monahon, Richard W. Lewis, John L. Sullivan, Kevin McCall, and the FDIC/R. This is referred to as the "Non–FDIC Defendants' Rule 56.1 Statement."

A second 56.1 Statement was submitted on behalf of the FDIC/C, Frank C. Campagna, and Michael Anderson. This is referred to as the "FDIC Defendants' Rule 56.1 Statement."

F.3d 648, 657–58 (2d Cir.1996); *see also Cooper v. Gottlieb,* No. 95 Civ. 10543, 2000 WL 1277593, at *4 (S.D.N.Y. Sept. 8, 2000). All parties have submitted affidavits with voluminous exhibits and that evidence further supports the statements of material facts that have not been disputed.

There is no genuine dispute as to the following facts. In December 1972, the United Mutual Savings Bank ("UMSB"), the predecessor in interest of American Savings Bank ("ASB"), extended the Loan to the plaintiff's predecessor, Rednow Realty Corp. ("Rednow"). (Non–FDIC Defendants' Local Rule 56.1 Statement of Material Undisputed Facts ("Non–FDIC 56.1 Stmt.") ¶ 10.)[1] Pursuant to the Mortgage between Rednow and UMSB, the Loan was secured by, among other things, the Plaintiff's leasehold interest in 127 John Street, New York, New York.[2] (Non–FDIC 56.1 Stmt. ¶ 11.)

Nineteen other financial institutions (the "Participants") acquired participation interests in the Loan. (Non–FDIC 56.1 Stmt. ¶ 76.) The rights of the Participants were detailed in a participation agreement dated October 15, 1970 (the "Participation Agreement"). The Participation Agreement provided that the Participants holding an aggregate of more than 50% of the face amount of the outstanding partic-

---

Although the FDIC/R is represented by counsel for the Non–FDIC Defendants and has joined the motion papers with those defendants, the plaintiff includes the FDIC/R in the list of the FDIC Defendants and alleges claims against it along with the other FDIC Defendants. Therefore, for purposes of this motion, unless otherwise indicated, FDIC/R will be included in the list of "FDIC Defendants."

**2.** ASB succeeded to UMSB's interest in the Loan after the Mortgage was executed and the plaintiff assumed Rednow's obligations under the Mortgage in or about September 1981. (Non–FDIC 56.1 Stmt. ¶¶ 12, 13.)

ipation interests could direct the lead bank to take action or refrain from taking action with respect to enforcing the Mortgage. (Non–FDIC 56.1 Stmt. ¶ 79.)

The Mortgage required monthly payments of basic interest on the first day of each month and an additional interest payment on April 15 each year. (Non–FDIC 56.1 Stmt. ¶¶ 14–15.) The Mortgage contained the Call Provision described above (Non–FDIC 56.1 Stmt. ¶ 19), and another clause that specified that only written modifications to the Mortgage would be valid. (Non–FDIC 56.1 Stmt. ¶ 21.)

On June 12, 1992, the Superintendent of Banks for the State of New York declared that ASB was an unsafe institution. (Non–FDIC 56.1 Stmt. ¶ 22.) ASB was closed and the FDIC was appointed to serve as receiver for the assets and interests of ASB and its subsidiary, Riverhead Savings Bank ("RSB"). (Non–FDIC 56.1 ¶ 23.) Pursuant to an asset liquidation agreement dated as of May 14, 1993 (the "RALA Agreement"), FDIC/R retained Aldrich, Eastman & Waltch, L.P. ("AEW") to liquidate, collect, and manage the assets of ASB and RSB, including the plaintiff's Loan. (Non–FDIC 56.1 Stmt. ¶ 25.) Frank Campagna ("Campagna") was the FDIC employee assigned as oversight manager with respect to the RALA Agreement. (Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 by the FDIC Defendants ("FDIC 56.1 Stmt.") ¶ 2.) Michael Anderson ("Anderson") was the FDIC employee assigned as the day to day portfolio manager of the ASB and RSB assets. (FDIC 56.1 Stmt. ¶ 3.)

On or about June 1, 1993, FDIC/R executed a power of attorney appointing the defendants J. Grant Monahon ("Monahon"), Richard W. Lewis ("Lewis"), John L. Sullivan ("Sullivan"), and Kevin McCall ("McCall") as attorneys-in-fact to act on behalf of the FDIC with respect to the maintenance and liquidation of the assets of ASB and RSB, which included the Loan and Mortgage. (Non–FDIC 56.1 Stmt. ¶ 29.) Defendant Capital Management Resources, L.P. ("CMR"), an affiliate of AEW, provided asset management services in connection with AEW's performance of its obligations under the RALA Agreement with the consent of the FDIC. (Non–FDIC 56.1 Stmt. ¶¶ 33–34.) The plaintiff has sued AEW under its current name—Old Compton L.P.

Beginning in mid–1992, the plaintiff asked ASB and then the FDIC to waive the Call Provision of the Mortgage. (Non–FDIC 56.1 Stmt. ¶ 50.) In January and February 1993, the plaintiff withheld Mortgage payments to get the attention of the FDIC so that it would negotiate a waiver of the Call Provision. (Non–FDIC 56.1 Stmt. ¶ 51.) The FDIC and the Plaintiff never signed any agreement to waive the Call Provision. (Non–FDIC 56.1 Stmt. ¶ 53.) The plaintiff failed to make a payment of additional interest on April 15, 1993, which it never cured. (Non–FDIC 56.1 Stmt. ¶¶ 55–56.) The plaintiff also failed to make basic interest payments on July 1, 1993, August 1, 1993, September 1, 1993, October 1, 1993, and November 1, 1993. (Non–FDIC 56.1 Stmt. ¶ 60.)

By letter dated July 20, 1993, an asset manager at CMR notified the plaintiff of its failure to make the April 15, 1993 additional interest payment. (Non–FDIC 56.1 Stmt. ¶ 69.) On August 4, 1993, representatives of CMR met with representatives of the plaintiff and advised the plaintiff that it was required to bring the Loan current. (Non–FDIC 56.1 Stmt. ¶ 70.) By letter dated August 13, 1993, defendant Lewis informed the plaintiff that the Loan was in default and demanded that John Street bring the Loan current. (Non–FDIC 56.1 Stmt. ¶ 73.)

By letter dated August 13, 1993 to the Participants, CMR informed the Participants that it would pursue the mortgagee's rights and remedies if John Street's default was not cured. (Non–FDIC 56.1 Stmt. ¶ 80.) On September 22, 1993, the Participants discussed the possibility of commencing a foreclosure action against John Street. (Non–FDIC 56.1 Stmt. ¶ 81.) Only a small minority of the Participants holding less than 50% of the outstanding participation interests opposed commencing a foreclosure action. (Non–FDIC 56.1 Stmt. ¶ 87.) By letter dated September 14, 1993, the FDIC/R declared John Street's Loan to be in default. (Non–FDIC 56.1 Stmt. ¶ 74.)

On September 27, 1993, representatives of AEW and CMR submitted a "Request to Pursue Foreclosure Rights" (the "Case") to the FDIC/R that recommended initiating a foreclosure action against the plaintiff. (Non–FDIC 56.1 Stmt. ¶ 90.) Defendants Campagna and Anderson were the voting members of the RALA credit review committee (the "Committee") that considered the Case on behalf of FDIC/R. (Non–FDIC 56.1 Stmt. ¶ 91.) The Committee approved the Case on October 7, 1993 on behalf of FDIC/R and authorized AEW and CMR to commence a foreclosure action. (Non–FDIC 56.1 Stmt. ¶¶ 98–99.)

On November 12, 1993, FDIC/R commenced an action to foreclose the Mortgage in the Supreme Court of the State of New York, New York County. (Non–FDIC 56.1 Stmt. ¶ 103.) On December 9, 1993, John Street voluntarily filed a petition for relief under Chapter 11 of the Bankruptcy Code. (Non–FDIC 56.1 Stmt. ¶ 106.)

From December 1993 to February 1994, the plaintiff complained to the FDIC about the conduct of the Non–FDIC Defendants and the FDIC with respect to the Mortgage. (FDIC 56.1 Stmt. ¶ 7.) By letter dated December 15, 1993, the FDIC/R informed the plaintiff that CMR was responsible for working with the plaintiff on any issues relating to the Loan. (Non–FDIC 56.1 Stmt. ¶ 35.) The FDIC also referred the plaintiff to Campagna who was described as the "RALA Ombudsman." (FDIC 56.1 Stmt. ¶ 8.) In his role as RALA Ombudsman, Campagna had two conversations with Melvin Kaufman ("Kaufman"), a representative of the plaintiff, and sent Kaufman a letter in which Campagna explained: "... we had made no specific deal regarding a resolution of your situation other than the concept that [CMR] would keep me apprised of events as warranted." (FDIC 56.1 Stmt. ¶ 9; Declaration of Wendy H. Schwartz dated Sept. 15, 2000 at Ex. B.)

2.

In 1995, the plaintiff filed a state court action against the FDIC for breach of contract, fraud, negligent misrepresentation, and breach of an implied covenant of good faith and fair dealing with respect to the Mortgage and Participation Agreement. The FDIC removed that action to this Court. *John Street Leasehold LLC v. Federal Deposit Ins. Corp.*, 95 Civ. 10174, 1996 WL 737196 (S.D.N.Y.) (*"John Street I"*).

Those claims focused on the breach of an alleged oral agreement between the plaintiff and the FDIC to waive the Call Provision of the Mortgage. The facts developed in that lawsuit included the following. In May 1992, John Street asked ASB to waive the call provision. After ASB failed and the FDIC was appointed as its receiver, the FDIC informed John Street by letter dated September 22, 1992 that the Participants would consider waiving the Call Provision for five years in exchange for, among other things, John Street's commitment to remove asbestos from the building located at 127 John

Street and to pay for all costs arising from leasing additional space in the building. Over the next few months, John Street and the FDIC were unable to reach an agreement regarding the terms of any waiver of the Call Provision. *John Street Leasehold, LLC,* 1996 WL 737196, at *2. John Street then withheld interest payments required by the Mortgage and the FDIC instituted a foreclosure proceeding. *John Street Leasehold, LLC,* 1996 WL 737196, at *3.

The FDIC moved for summary judgment dismissing all claims. On December 24, 1996, this Court granted the FDIC's motion for summary judgment dismissing John Street's fraud and negligent misrepresentation claims because John Street could not have reasonably relied on any oral representations by the FDIC about the Mortgage because the Mortgage specified that it could only be modified in writing. *Id.* at *7–8. This Court also granted the FDIC's motion to dismiss John Street's breach of the implied covenant of good faith and fair dealing claim with respect to the Mortgage because the FDIC was not obligated under the Mortgage to waive the Call Provision. *Id.* at *8–9. The Court also granted the FDIC's motion to dismiss the breach of the implied covenant of good faith and fair dealing claim with respect to the Participation Agreement because the plaintiff was not a third party beneficiary of the Participation Agreement and the FDIC did not breach the Participation Agreement. *Id.* at *9–10. However, the Court denied the motion for summary judgment dismissing the breach of contract claim based on the alleged oral agreement because issues of fact existed as to whether the oral agreement existed, whether it was a waiver of the Call Provision or a modification, and whether John Street's asbestos abatement expenditures constituted partial performance or established equitable estoppel. *Id.* at *3–7, 11.

On July 22, 1998, the Court granted the FDIC's renewed motion for summary judgment and dismissed John Street's breach of contract claim for three independent reasons. First, the alleged oral agreement to waive the Call Provision was too vague to be enforceable. *John Street Leasehold, LLC,* 1998 WL 411328, at *3–6. Second, the oral agreement was barred by the Statute of Frauds. *Id.* at *6–9. Third, the plaintiff breached a material term of the alleged oral agreement by failing to remain current on the Loan, specifically by failing to make a payment of additional interest on April 15, 1993. *Id.* at *10. The Court of Appeals for the Second Circuit affirmed the judgment dismissing the plaintiff's claims. *John Street Leasehold, LLC v. Federal Deposit Ins. Corp.,* 196 F.3d 379 (2d Cir.1999) (per curiam).

### 3.

The plaintiff originally filed the current action against the Non–FDIC Defendants in the New York State Supreme Court, New York County in February 1998. The Non–FDIC Defendants removed the case to this Court based on diversity of citizenship jurisdiction. In July 2000, the Court granted the plaintiff's motion to serve and file an Amended Complaint, and the plaintiff filed an Amended and Restated Complaint adding the FDIC Defendants as defendants.

The plaintiff alleges six causes of action in its discursive Amended and Restated Complaint. The first claim is asserted against the Non–FDIC Defendants and alleges that they tortiously injured the plaintiff by acting in bad faith to accelerate the foreclosure of the Mortgage. The second claim alleges that the Case supporting foreclosure submitted by the Non–FDIC Defendants contained false statements. The third claim generally alleges that the

Non–FDIC Defendants acted for their personal, pecuniary gain by refusing to negotiate in good faith with John Street to restructure the Mortgage. The fourth claim is asserted against CMR and Lewis and alleges that they acted maliciously for pecuniary gain causing injury to the plaintiff. The fifth claim is asserted against Campagna and Anderson and alleges that they violated the plaintiff's right to due process and equal protection under the Fifth Amendment to the United States Constitution. The sixth claim seeks to hold the FDIC Defendants liable for the allegedly tortious acts of the Non–FDIC Defendants.

## II.

The FDIC Defendants and the Non–FDIC Defendants argue that under the doctrine of res judicata, or claim preclusion, this action is barred by the final judgment dismissing the claims in *John Street I* entered by this Court and affirmed by the Court of Appeals. The plaintiff contends that *John Street I* only decided claims relating to the alleged oral agreement to waive the Call Provision and that this action is based on acts of wrongdoing by defendants who became involved with the Mortgage after the alleged oral agreement was made by the plaintiff and the FDIC.

■■■ "Under the doctrine of res judicata, a final judgment on the merits in an action 'precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Computer Assoc. Inter., Inc. v. Altai, Inc.,* 126 F.3d 365, 368 (2d Cir.1997) (*quoting Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). A party bound by res judicata may not bring any cause of action arising out of "the transaction or series of transactions which was the subject of the prior

suit." *Id.* It does not matter whether the specific claims in the second action were raised in the first action because "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Saud v. Bank of New York,* 929 F.2d 916, 919 (2d Cir.1991) (internal quotations and citations omitted). A party bound by the first judgment may not avoid the effects of res judicata by repackaging an adjudicated claim in new legal theories to bring a second claim when the facts essential to the second claim were present at the time of the adjudicated claim. *See Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 110–11 (2d Cir. 2000).

The Court of Appeals has instructed that to determine whether a second suit springs from the same "transaction" or "claim" as the first action, a court should look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations. *Id.* at 108. Each of these factors indicates that the claims in the current lawsuit are barred by the judgment in *John Street I.*

### A.

#### 1.

■■■ The underlying facts in the current lawsuit are inextricably intertwined with and overlap the facts that were the subject of *John Street I.* The thrust of the complaint in *John Street I* was that the FDIC acted in bad faith by breaching an oral agreement to waive the Call Provision and that as a result, the FDIC foreclosed on 127 John Street and the plaintiff was damaged. In this action, the Amended and Restated Complaint alleges that the agents of the FDIC, acting in bad faith

and beyond their authority for personal gain, caused the FDIC to foreclose on 127 John Street. This action is based on the same transactions and the same nucleus of operative facts that were at issue in *John Street I*, namely, the failure of the plaintiff to make the payments required by the Mortgage, the decision by the FDIC/R to foreclose on the Mortgage, and the subsequent foreclosure proceedings in state court. The damages in *John Street I*, as in this case, arise from the allegedly wrongful foreclosure.

The facts underlying this action are coterminus with the allegations in *John Street I*. In *John Street I*, the plaintiff alleged that the FDIC/R and FDIC/C acted wrongfully in not honoring the alleged oral agreement to waive the Call Provision, that they were liable for fraud and negligent misrepresentation, and that they breached a covenant of good faith and fair dealing both under the Mortgage and the Participation Agreement. In this action, the same plaintiff alleges that the Non–FDIC Defendants wrongfully caused the FDIC to initiate the same foreclosure by generally failing to follow proper procedures and acting for improper motives. (Claims One, Two, Three, and Four.) The Amended and Restated Complaint in this action also alleges that Campagna and Anderson, employees of the FDIC, failed to follow proper FDIC procedures in deciding on the foreclosure and thereby violated the plaintiff's constitutional rights. (Claim Five.) The plaintiff also seeks to hold the FDIC liable for the acts of the Non–FDIC Defendants in allegedly wrongfully bringing about the foreclosure. (Claim Six.)

Not only are the factual allegations coterminus as to time, space, origin and effect, but many of the critical supporting allegations are identical. The plaintiff alleges in this case that the Non–FDIC De-fendants failed to negotiate in good faith to restructure the Mortgage (Amended and Restated Complaint ("Am. and Rest. Compl.") ¶ 87) and improperly refused to waive the Call Provision (Am. and Rest. Compl. ¶¶ 60, 72–73, 106), all of which were substantive allegations in *John Street I*. While the plaintiff alleged in *John Street I* that the FDIC wrongfully breached its agreement to waive the Call Provision, in this action the plaintiff alleges that the defendants tortiously refused to waive the Call Provision bringing about the very same injury—foreclosure of the Mortgage. (Am. and Rest. Compl. ¶¶ 71–73.)

The allegation in the present case would have been a convenient trial unit with the allegations in *John Street I*. The witnesses and the evidence to the activities in both cases and the evidence would be substantially the same.

Similarly, the plaintiff and the FDIC Defendants would have expected that all claims by the plaintiff challenging the foreclosure of the Mortgage would have been brought in *John Street I*.

The plaintiff argues that this action is not barred by res judicata because the actions giving rise to its new claims occurred after April 1993 when the plaintiff and the FDIC allegedly entered into an oral agreement to waive the Call Provision that was alleged in *John Street I*. The argument is disingenuous. The amended complaint in *John Street I* not only alleged acts up to April 1993 but alleged events through the end of 1993. The basis for the action in *John Street I* was the alleged breach of the agreement by the FDIC after it was formed in April 1993 and subsequent damage to the plaintiff caused by the foreclosure of the Mortgage in December 1993 which allegedly resulted in the plaintiff's bankruptcy. (*John Street I*, Am. Compl. ¶¶ 34–37, 44–48, 54–58, 64–69, 73–85.) In *John Street I*, the plaintiff also

explicitly cited conduct occurring from February to December 1993 that was the basis of a claim that the FDIC breached an obligation of good faith and fair dealing with respect to the Mortgage and Participation Agreement. (*John Street I*, Am. Compl. ¶¶ 75–77.)

Other than the addition of certain defendants, the essential distinction between this action and *John Street I* is that the respective complaints allege somewhat different theories to explain the cause of the FDIC's decision to institute foreclosure proceedings. Both actions are directed at the same Loan, Mortgage, default, and foreclosure action. Both actions allege that the FDIC's decision to institute foreclosure proceedings was wrongful. The only difference is that the plaintiff no longer claims that the failure to waive the Call Provision caused the foreclosure and instead argues that the Non–FDIC Defendants wrongfully influenced the FDIC to institute foreclosure proceedings and that the FDIC employees violated the plaintiff's rights in carrying out their roles in the foreclosure decision. Those acts include allegedly fraudulent statements in the Case submitted by CMR and AEW to the Committee, and the procedures by which Campagna and Anderson approved the Case and allowed the foreclosure to proceed. All of these actions arise out of the same foreclosure that was the subject of *John Street I*. While the allegations in this action involve more defendants because they are directed at the particular agents involved with the FDIC's decision to foreclose to support a new theory of liability, res judicata still applies because the theory arises out of the same set of facts that gave rise to *John Street I*. *See, e.g.*, *Waldman*, 207 F.3d at 110–11; *Saud*, 929 F.2d at 919.

The plaintiff cannot avoid res judicata by "splitting" its claims into various suits based on different legal theories. *Waldman*, 207 F.3d at 110. It is enough that the facts essential to the current lawsuit were present when the plaintiff brought *John Street I*. *Id.* at 111. The claims in the current lawsuit are therefore barred by res judicata.

2.

The plaintiff argues that its claims in this action are based on new evidence that it only recently discovered after the decisions dismissing the claims in *John Street I*. New evidence would not preclude the application of res judicata unless the evidence had been fraudulently concealed or was undiscoverable earlier with due diligence. *See, e.g., L–Tec Elec. Corp. v. Cougar Elec. Org.*, 198 F.3d 85, 88 (2d Cir.1999); *Saud*, 929 F.2d at 920; *Joint Apprenticeship and Training Council of Local 363, Inter. Brotherhood of Teamsters v. New York State Dep't of Labor*, 842 F.Supp. 1561, 1565 (S.D.N.Y. 1994). Neither exception applies in this case.

The plaintiff claims that the information in the Case presented to the Committee is newly discovered evidence but does not dispute that before this Court dismissed *John Street I*, copies of the Case were produced to three separate law firms that represented the plaintiff in prior litigation against the FDIC/R. (Non–FDIC 56.1 Stmt. ¶ 107.) The evidence that allegedly supports the plaintiff's claims was available and indeed was produced in the course of *John Street I*.

The plaintiff also argues that res judicata should not apply because the defendants discarded documents essential to the plaintiff's case. "[A] party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Kronisch v. United*

*States,* 150 F.3d 112, 126 (2d Cir.1998) (citations omitted). Such an adverse inference may also be appropriate when evidence is destroyed due to the gross negligence of a party. *See, e.g., Reilly v. Natwest Markets Group, Inc.,* 181 F.3d 253, 267–68 (2d Cir.1999), *cert. denied,* 528 U.S. 1119, 120 S.Ct. 940, 145 L.Ed.2d 818 (2000). An adverse inference from the destruction of evidence can only arise if the party with control over the evidence had an obligation to preserve it when it was destroyed. *Kronisch,* 150 F.3d at 126–27. Such an obligation typically arises when the party has notice that the evidence is relevant to litigation through the filing of a complaint. *Id.* Furthermore, there must be "some showing indicating that the destroyed evidence would have been relevant to the contested issue." *Id.* at 127 (citations omitted).

The plaintiff has offered no evidence that the defendants did anything other than discard or misplace documents in the normal course of business. The plaintiff has not established that any of these documents were intentionally or even negligently destroyed at a time when the defendants had an obligation to preserve them. There is no evidence of culpable intent that would warrant an adverse inference against the defendants. Moreover, the plaintiff has not established that any documents would have been relevant to the material issues in this litigation. The plaintiff's unsupported speculation that certain discarded documents might contain evidence supporting the plaintiff's allegations is insufficient to avoid summary judgment. *See, e.g., Kronisch,* 150 F.3d at 128.

■ Moreover, the magistrate judge in this case has already ruled that the "plaintiff has offered no specific evidence that non-privileged documents concerning its loan have been withheld." *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.,* No. 98 Civ.1965, 1999 WL 1029728, at *4 (S.D.N.Y. Nov. 10, 1999). The cause of the foreclosure was a significant issue in *John Street I* and the plaintiff had ample opportunity to discover the facts that are the basis of this action in *John Street I.* Any facts that the plaintiff presented in this case were discoverable with due diligence in the first action. The facts presented by the plaintiff in this case are only new in the sense that the plaintiff attempts to use them to support new legal theories. But the plaintiff is barred from presenting new legal theories that could have been raised in the prior action. *See, e.g., Waldman,* 207 F.3d at 110–11. Therefore, res judicata bars all of the claims in the present action.[3]

## B.

■ The plaintiff also argues that res judicata does not bar its action against FDIC employees Campagna and Anderson, and against the Non–FDIC Defendants because those defendants were not parties in *John Street I* where only the FDIC/R and FDIC/C were defendants. A defendant who was not a party to a prior judgment may only assert a res judicata defense based on that judgment if it is in privity with the named defendant in the prior action. *See Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa*

---

**3.** The plaintiff also argues that a judgment should be entered in its favor because of alleged spoliation of documents. While a court may impose a severe sanction such as dismissal against an offending party because of spoliation, such a sanction is only appropriate when there is a showing of wilfulness, bad faith or fault and after due consideration of lesser sanctions. *See, e.g., West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779–80 (2d Cir.1999). In this case, the plaintiff has not shown any misconduct or the destruction of any documents. The plaintiff has failed to show a basis for any sanctions.

S.A., 56 F.3d 359, 367–68 (2d Cir.1995); *Russell v. SunAmerica Securities, Inc.,* 962 F.2d 1169, 1173 (5th Cir.1992); *Somerville House Mgmt., Ltd. v. Arts & Entm't Television Network,* No. 92 Civ. 4705, 1993 WL 138736, at *2 (S.D.N.Y. April 28, 1993); *Official Publ'ns, Inc. v. Kable News Co., Inc.,* 811 F.Supp. 143, 147 (S.D.N.Y. 1993). However, "[t]he doctrine of privity, which extends the res judicata effect of a prior judgment to nonparties who are in privity with the parties to the first action, is to be applied with flexibility." *Amalgamated Sugar Co. v. NL Indus., Inc.,* 825 F.2d 634, 640 (2d Cir.1987) (citation omitted). "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Central Hudson Gas & Electric Corp.,* 56 F.3d at 367–68 (citation omitted).

 Campagna and Anderson and the Non–FDIC Defendants argue that they meet the privity requirement because the alleged conduct that is the basis of the plaintiff's claims occurred within the scope of their agency with the FDIC. Most courts of appeals have held that an agency relationship is sufficient to establish privity for the purposes of res judicata. *See, e.g., Citibank, N.A. v. Data Lease Fin. Corp.,* 904 F.2d 1498, 1502–03 (11th Cir.1990) (collecting cases); *Lubrizol Corp. v. Exxon Corp.,* 871 F.2d 1279, 1288–89 (5th Cir. 1989); *Fiumara v. Fireman's Fund Ins. Cos.,* 746 F.2d 87, 92 (1st Cir.1984). Finding privity in an agency relationship is consistent with the teaching of the Court of Appeals for the Second Circuit that privity is to be applied "flexibly" and is to be found where the new defendants have a "sufficiently close relationship" with the defendants in the first action. *See Central Hudson Gas & Electric Corp.,* 56 F.3d at 367–68.

The plaintiff acknowledges that Campagna and Anderson and the Non–FDIC Defendants were agents of the FDIC (Am. and Rest. Compl. ¶¶ 65, 76), but the Amended and Restated Complaint alleges that those defendants were not acting as agents for the FDIC because the conduct that is the subject of this action occurred outside the scope of their agency. The argument is frivolous.

 The acts of an agent are within the scope of the agency if the agent is discharging the agent's duties to its principal, "no matter how irregularly, or with what disregard of instructions." *Riviello v. Waldron,* 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278, 1281 (1979) (internal quotation and citation omitted); *accord Maldonado v. Colon,* No. 97 Civ. 3966, 1998 WL 240479, at *3 (S.D.N.Y. May 12, 1998); *Morillo v. City of New York,* No. 95 Civ. 2176, 1997 WL 72155, at *7 (S.D.N.Y. Feb. 20, 1997).[4]

There is no evidence that Campagna or Anderson were acting outside the scope of their agency. Both Campagna and Anderson were FDIC employees who were authorized to manage the RALA. (FDIC 56.1 Stmt. ¶¶ 2–3.) Both Campagna and Anderson had authority to review cases submitted to the FDIC/R by its contrac-

---

4. The parties have proceeded on the assumption that New York law governs the first four causes of action in this case and have not suggested that the law of any other jurisdiction should govern the scope of agency for any claim. Thus, the Court will apply New York law to the issue of whether the defendants acted outside the scope of their agency. *See R.E. Wood v. Mid–Valley Inc.,* 942 F.2d 425, 426–27 (7th Cir.1991). In any event, there is no suggestion that New York law differs from the law of any other possibly relevant jurisdiction. *See* Restatement (Second) of Agency §§ 228, 236 (1957).

tors. (Non–FDIC 56.1 Stmt. ¶¶ 91–92.) Campagna was also designated by the FDIC as Ombudsman for the RALA contracts. (FDIC 56.1 Stmt. ¶¶ 4–6.) The activities of which the plaintiff complains— the way in which Campagna and Anderson managed the RALA and reviewed the Case and the way in which Campagna carried out his responsibilities as Ombudsman—were all within the scope of the agency that Campagna and Anderson had from the FDIC.

Similarly, there is no evidence that any Non–FDIC Defendants were acting outside the scope of such agent's authority. The plaintiff has not answered and therefore has admitted the Non–FDIC Defendants' Local Civil Rule 56.1 statement, which establishes that Monahon, Sullivan, and McCall never took any action with respect to John Street. (Non–FDIC 56.1 Stmt. ¶ 40.) Thus, the plaintiff has not specifically alleged that any of their conduct could have caused tortious harm to John Street or occurred outside the scope of their agency. Similarly, the plaintiff has conceded by not responding to the Non–FDIC Defendants' Local Civil Rule 56.1 Statement that CMR Corp., Old Compton Holdings L.P. f/k/a AEW Holdings L.P. and Old Compton Inc. f/k/a Aldrich, Eastman & Waltch took no action with respect to the waiver of the Call Provision or the foreclosure of the Mortgage and thus have no responsibility for any of the actions alleged by the plaintiff. (Non–FDIC 56.1 Stmt. ¶¶ 37–39.) AEW and CMR were authorized by the FDIC to deal with any issues relating to the Loan. (Non–FDIC 56.1 ¶¶ 34–35.) Moreover, AEW and CMR were authorized by the FDIC to commence a foreclosure action against John Street. (Non–FDIC 56.1 Stmt. ¶ 99.) The FDIC/R appointed Lewis as an attorney-of-fact to act on behalf of the FDIC in connection with the maintenance and liquidation of the assets of ASB

and RSB, including the Loan and the Mortgage. (Non–FDIC 56.1 Stmt. ¶ 29.)

Hence, all of the activities of the Non–FDIC Defendants about which the plaintiff complains, including all of their activities in dealing with the foreclosure of the Mortgage, were well within the scope of their agency. The plaintiff's conclusory allegations are insufficient to establish that any of the activities of the Non–FDIC Defendants were outside the scope of their agency from the FDIC. *See, e.g., Capitol Indemnity Corp. v. Curiale*, 871 F.Supp. 205, 209 (S.D.N.Y.1994).

The plaintiff alleges that the Non–FDIC Defendants were acting outside the scope of their agency because they were motivated to maximize their financial gain. (Am. and Rest. Compl. ¶ 60.) Under New York law, an agent acts outside the scope of its agency if it is motivated solely by personal motives unrelated to the furtherance of the principal's business. *See, e.g., Morillo*, 1997 WL 72155, at *7; *Blesy v. United States*, 443 F.Supp. 358, 362 (W.D.N.Y.1978). However, the plaintiff has provided no evidence that any of the Non–FDIC Defendants had personal motivations that were unrelated to their duties with the FDIC. The plaintiff alleges that the FDIC's RALA Agreement provided the Non–FDIC Defendants with a financial incentive to foreclose on mortgages rather than to service them. (Am. and Rest. Compl. ¶¶ 53, 82.) But the RALA Agreement was the source of AEW and CMR's agency with the FDIC. AEW was retained by the FDIC pursuant to the RALA Agreement and CMR provided services in connection with AEW's obligations under the RALA Agreement. (Non–FDIC 56.1 Stmt. ¶¶ 25, 33–34.) Thus, any financial motive provided by the RALA Agreement was directly related to the Non–FDIC Defendants' duties for the FDIC and would

544

not support an allegation that they acted for personal motives unrelated to the business of the FDIC.

While it is not wholly clear whether the plaintiff has attempted to argue that FDIC employees Campagna and Anderson had any personal financial motive beyond their employment with the FDIC, it is sufficient to note that there is no evidence of any financial incentive for Campagna and Anderson other than any compensation they received for carrying out their duties as employees of the FDIC.

In short, Campagna and Anderson, and the Non–FDIC Defendants were all acting within the scope of their agency from the FDIC when they took any actions about which the plaintiff has complained. Each of them was in privity with the FDIC and there is a sufficiently close relationship between them and the FDIC with respect to the transactions in *John Street I* and this case such that the plaintiff is barred by res judicata from pursuing all the claims in this case not only against FDIC/R and FDIC/C but also against Campagna and Anderson, and the Non–FDIC Defendants.

### III.

■ The Non–FDIC Defendants argue that the plaintiff's first four claims for tortious injury, which allege that they acted in bad faith and with malice, abused their authority, and acted in furtherance of their own pecuniary gain by improperly accelerating the foreclosure of the Mortgage, are not only barred by res judicata but also should be dismissed because the plaintiff has failed to establish any valid claim for relief. The plaintiff cites a num-

ber of different legal sources for its claims, most primarily what it refers to as the "unspecified" or "general" tort that it argues was established in *Singer v. Jefferies & Co. Inc.*, 160 A.D.2d 216, 553 N.Y.S.2d 346 (1990).[5]

In *Singer*, the plaintiff, Michael G. Singer ("Singer") worked in the corporate finance department of Jefferies & Co. Following the instructions of the Chief Executive Officer of Jefferies & Co., Boyd Jefferies ("Jefferies"), Singer dictated and signed a $3,000,000.00 invoice for services rendered to the Ivan F. Boesky Corporation. Later, Singer became the subject of an SEC subpoena that was issued in the insider trading investigation of Ivan Boesky and which specifically asked about the invoice that Singer had signed. At the time when the subpoena was issued, Singer had joined Salomon Brothers and was asked to resign pending the outcome of the investigation. The plaintiff was later exonerated of any wrongdoing but was not rehired by Salomon Brothers and accepted a position with another firm at a significantly lower salary. The plaintiff brought suit against Jefferies & Co. and Jefferies alleging that they had injured his trade and profession and his reputation.

The Appellate Division affirmed the denial of the defendants' motion for summary judgment. The Appellate Division found that there was a sustainable tort action that did not fit into a formal category but that could be analogized to a variety of torts including, but not limited to fraud and misrepresentation, malicious prosecution, and breach of contract. The Appellate Division therefore concluded that the

**5.** This action was removed to this Court on the basis of diversity of citizenship and the parties have verified that complete diversity of citizenship exists. The parties agree that the Court should apply New York law to the first four causes of action and the Court will apply New York substantive law. *See, e.g., Texaco v. Commercial Ins. Co.*, 160 F.3d 124, 128 (2d Cir.1998); *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997).

statute of limitations for fraud rather than for defamation should apply. *Id.* at 218–19, 553 N.Y.S.2d 346.

The plaintiff has not stated a cause of action under *Singer*. *Singer* held that there was a cause of action against an employer analogous to fraud when an employer injured an innocent employee's trade, profession, or reputation by publicly involving the innocent employee with the employer's criminal wrongdoing. The Appellate Division noted that the plaintiff appeared to satisfy the elements for a claim of fraud. *Singer*, 553 N.Y.S.2d at 349 n. 1. The plaintiff's allegations are not remotely similar to the claims in *Singer*. The plaintiff did not have an employer-employee relationship with any of the Non–FDIC Defendants and there is no allegation that the plaintiff's trade, profession, or reputation was injured by alleged involvement with the Non–FDIC Defendants.

The plaintiff relies on dicta in *Singer* to argue that *Singer* creates an "unspecified tort." However, *Singer* did not create a new, catch-all cause of action for "unspecified tort," but only indicated that certain allegations can be sustainable as tort actions if they are sufficiently analogous to an established tort action. *See, e.g., Eavzan v. Polo Ralph Lauren Corp.*, 40 F.Supp.2d 147, 152 (S.D.N.Y.1998); *Menaldi v. Pay–Per–View Network, Inc.*, No. 97 Civ. 6451, 1998 WL 230994, at *2 n. 4 (S.D.N.Y. May 5, 1998), *aff'd sub nom., Menaldi v. Group W Broadcasting, Inc.*, 182 F.3d 900, 1999 WL 486978 (2d Cir. 1999).

▮▮▮ The plaintiff has not established that its allegations are similar to any tort. In its complaint, the plaintiff argued that the conduct by the Non–FDIC Defendants was analogous to tortious interference with contract. (Am. and Rest. Compl. ¶ 78.) Under New York law, the elements of a tortious interference of contract claim are: "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Four Finger Art Factory, Inc. v. Dinicola*, No. 99 Civ. 1259, 2001 WL 21248, at *6 (S.D.N.Y. Jan. 9, 2001) (*quoting Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir.1996)).

The plaintiff can not establish a tortious interference with contract claim based on any alleged interference with the alleged oral agreement to waive the Call Provision. *John Street I* already determined that there was no enforceable contract to waive the Call Provision. The plaintiff is collaterally estopped from disputing that finding. Nor can the plaintiff establish any tortious interference with contract claim against the Non–FDIC Defendants with respect to the Mortgage. The plaintiff has submitted no evidence that the Non–FDIC Defendants procured a breach of the Mortgage. Indeed, the plaintiff had breached its obligations under the Mortgage by not paying interest before the Non–FDIC Defendants became involved with managing assets under the RALA Agreement for the FDIC. (Non–FDIC 56.1 Stmt. ¶ 57.) Therefore, the Non–FDIC Defendants could not have procured a breach of the Mortgage. Thus, the plaintiff has not established the elements of a tortious interference with contract claim with respect to the alleged agreement to waive the Call Provision or the Mortgage.

The plaintiff has not established that the events it describes would support an action analogous to a tortious interference with contract claim. The gist of the plaintiff's tort claims is that the Non–FDIC Defendants wrongfully accelerated foreclosure of the Mortgage by the FDIC. The plaintiff is essentially claiming that the Non–FDIC

Defendants encouraged the FDIC to enforce its rights under the Mortgage after the plaintiff breached the Mortgage by defaulting. There is no cause of action for encouraging another party to enforce its rights under a contract after there has been a material breach. The plaintiff's claims are not analogous to a tortious interference with contract claim or any other established tort. Because the plaintiff has not met the elements of tortious interference with contract or described allegations that would sustain an analogous claim, it has no cause of action for tort. *See, e.g., O'Brien v. Alexander,* 898 F.Supp. 162, 173 (S.D.N.Y.1995), *aff'd in relevant part,* 101 F.3d 1479 (2d Cir.1996) ("It would make little sense to hold that [the] plaintiff may not prevail on a cause of action, having failed to establish certain elements, which are essential thereto, and then in the exercise of flexibility, apply a different name to it, and without correcting any of the fatal defects, permit the cause of action (absent a unique quality) to stand.") (citation omitted).

■ In its papers and at oral argument, the plaintiff claimed that a case cited in *Singer, Gale v. Ryan,* 263 A.D. 76, 31 N.Y.S.2d 732 (1941), also supports a cause of action in this case. *Gale* held that an action "for written or oral falsehoods, not actionable per se nor even defamatory, where they are maliciously published, where they are calculated in the ordinary course of things to produce, and where they do produce, actual damage, is established law." *Gale,* 31 N.Y.S.2d at 734 (internal quotation and citation omitted). The plaintiff has asserted that the Non–FDIC Defendants submitted a Case with false statements to the FDIC (Am. and

Rest. Compl. ¶ 84), but the plaintiff has failed to establish that any specific statements in the Case caused it actual damages in view of the undisputed defaults by the plaintiff in meeting its interest obligations under the Mortgage, and the plaintiff has also failed to submit any evidence to show that the Non–FDIC Defendants acted maliciously.

■ *Gale* does not define the term malice. There are two ways in which malice has been defined in the context of defamation actions. Common law malice, which "means spite or ill will," and constitutional malice, or actual malice, which "means publication with a high degree of awareness of the publication's probable falsity or while the defendant in fact entertained serious doubts as to the truth of the publication." *Konikoff v. Prudential Ins. Co.,* 234 F.3d 92, 98–99 (2d Cir.2000) (internal quotations and citations omitted).

The plaintiff has not submitted any evidence that the Non–FDIC Defendants acted with any form of malice in submitting the Case to the Committee. For this reason also, the plaintiff has no claim under *Gale. See, e.g., Penn–Ohio Steel Corp. v. Allis–Chalmers Mfg. Co.,* 28 A.D.2d 659, 280 N.Y.S.2d 679, 680 (1967), *aff'd* 21 N.Y.2d 916, 289 N.Y.S.2d 753, 237 N.E.2d 73 (1968) (reversing judgment entered on jury verdict in cause of action based on *Gale* because there was insufficient evidence of malice); *see also Anas v. Brown,* 269 A.D.2d 761, 702 N.Y.S.2d 732, 734–35 (2000) (holding that conclusory allegations of malice are insufficient to avoid summary judgment); *Conciatori v. Longworth,* 259 A.D.2d 459, 686 N.Y.S.2d 68, 70 (1999) (same); *Bassim v. Howlett III,* 191 A.D.2d 760, 594 N.Y.S.2d 381, 384 (1993) (same).[6]

---

**6.** The allegations would also be insufficient to allege any claim under *Gale* because *Gale* requires that special damages be pleaded and the plaintiff has pleaded damages only in the

general amount of $50,000,000.00, which is insufficient to plead special damages. *See, e.g., Penn–Ohio Steel Corp. v. Allis–Chalmers Mfg. Co.,* 7 A.D.2d 441, 184 N.Y.S.2d 58, 62

■ The plaintiff also cites indiscriminately to the RALA Agreement, the FDIC Credit Manual, and statutes such as 18 U.S.C. § 1001, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101–73, 103 Stat. 183 (codified as amended in various sections of 12 U.S.C.) ("FIRREA"), and the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. 102–242, 105 Stat. 2236 (codified as amended in various sections of 12 U.S.C.) ("FDICIA") to support its tort claims. However, the plaintiff has not shown that it has a private cause of action under any of these authorities. The RALA Agreement explicitly states that it does not create any third party rights (Non–FDIC 56.1 Stmt. ¶ 28), and the FDIC Credit Manual does not have the force of law. *See, e.g., Gosnell v. Federal Deposit Ins. Co.,* No. 90 Civ. 1266L, 1991 WL 533637, at *9 (W.D.N.Y. Feb. 4, 1991), *aff'd,* 938 F.2d 372 (2d Cir.1991); *see also First State Bank of Hudson County v. United States,* 599 F.2d 558, 564 (3d Cir. 1979) (FDIC Manual of Examination Policies created no actionable duty on FDIC to warn banks of misconduct by employees). Moreover, 18 U.S.C. § 1001 is a criminal statute and does not provide the plaintiff with a cause of action. *United States v. Richard Dattner Architects,* 972 F.Supp. 738, 744 n. 3 (S.D.N.Y.1997).

■ Finally, the plaintiff fails to cite any provision of FIRREA or FDICIA that creates a private right of action for the plaintiff. To determine whether a plaintiff has a private right of action under a statute, the Court must consider the four factors enumerated in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted ...—that is, does the statute create a federal right in favor of the plaintiff; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and (4) whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law.

*Alaji Salahuddin v. Alaji,* 232 F.3d 305, 308 (2d Cir.2000) (internal quotations and citations omitted). The "dispositive question" is whether Congress intended to establish a private cause of action. *Id.* The plaintiff is not in the intended class of beneficiaries under either FIRREA or FDICIA. The plaintiff has failed to point to any provision of FIRREA or FDICIA that was intended to benefit defaulting borrowers who seek to prevent foreclosures. *See, e.g., Hindes v. Federal Deposit Ins. Corp.,* 137 F.3d 148, 169–70 (3d Cir.1998) (noting that the intended beneficiaries of 12 U.S.C. § 1821(d)(13)(E) of FIRREA are the insurance fund and taxpayers); *Gosnell,* 938 F.2d at 376–77 (holding that FIRREA did not give disappointed bidders standing to challenge FDIC sale); *Federal Deposit Ins. Corp. v. Marina,* 892 F.2d 1522, 1525–26 (11th Cir.1990) (noting that borrowers fall outside the interests protected by the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811–1831k). Nor has the plaintiff attempted to show

(1959); *Zausner v. Fotochrome, Inc.,* 36 Misc.2d 84, 231 N.Y.S.2d 667, 668 (1962); *Ravich v. Kling,* 17 Misc.2d 683, 187 N.Y.S.2d 272, 274 (1959); *see also PI, Inc. v. Ogle,* No.

95 Civ. 1723, 1997 WL 37941, at *3 (S.D.N.Y. Jan. 30, 1997) (round sums without any attempt at itemization are insufficient to plead special damages).

that it has a claim under any such provision.

The plaintiff has failed to establish that it has any tort claim against the Non–FDIC Defendants as alleged in its first four causes of action. Therefore, summary judgment should also be granted dismissing the plaintiff's first four causes of action.

## IV.

 Defendants Campagna and Anderson also move for summary judgment dismissing the plaintiff's fifth cause of action, which asserts a claim under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) for alleged violations of the plaintiff's rights to due process and equal protection under the Fifth Amendment to the United States Constitution. The plaintiff alleges that Campagna and Anderson violated its due process rights by allowing the foreclosure action to proceed, and that Campagna breached a general duty to the public by failing to disclose that he was not an impartial Ombudsman. Campagna and Anderson argue that the plaintiff has not met the three year statute of limitations claims for a *Bivens* action and has not established a violation of its due process or equal protection rights.

## A.

 It is well-established that the statute of limitations for a *Bivens* action arising in New York is three years. *See, e.g., Tapia–Ortiz v. Doe*, 171 F.3d 150, 151 (2d Cir.1999). The plaintiff does not dispute that a three year statute of limitations applies and concedes that this action was brought more than three years after the foreclosure, but argues that the statute of limitations should be tolled. A *Bivens* claim will be equitably tolled if the plaintiff

shows that the "defendants' concealment of their wrongdoing prevented plaintiff from becoming aware of, or discovering through the exercise of reasonable diligence, his cause of action." *Kronisch v. United States*, 150 F.3d at 123 (citation omitted). The plaintiff argues that it did not learn of the alleged wrongdoing by Campagna and Anderson that is the basis of its *Bivens* claim until it took their depositions in this case. However, there is no evidence that Campagna and Anderson concealed any alleged wrongdoing. The plaintiff could have taken these depositions and asked the same questions five years ago when it brought *John Street I*. The fact that the plaintiff did not turn its attention to Campagna and Anderson until the depositions in this case does not establish that either defendant concealed any evidence or that the plaintiff in the exercise of reasonable diligence could not have sued them within the statute of limitations. The fifth cause of action should therefore be dismissed because it is barred by the statute of limitations.

## B.

### 1.

 Campagna and Anderson also argue that the plaintiff has not established that they violated its right to due process under the Fifth Amendment. To establish a constitutional violation of due process, the plaintiff must identify a property right, demonstrate that the defendant deprived it of that right, and then show that the deprivation occurred without due process. *See, e.g., Local 342, Long Island Public Serv. Employees v. Town Board of Huntington*, 31 F.3d 1191, 1194 (2d Cir.1994). The plaintiff claims that it was deprived of a property interest because it lost its equity in 127 John Street when the FDIC foreclosed on the property.

 Whatever property interest the plaintiff may have had in 127 John Street, *see McCachren v. United States Dept. of Agriculture*, 599 F.2d 655, 656–657 (5th Cir.1979) (per curiam) (mortgagor has no constitutional property interest in mortgaged property when there is an undisputed default under the mortgage giving the mortgagee the right to foreclose),[7] it is plain that the plaintiff received constitutional due process. Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *See Mathews v. Eldridge*, 424 U.S. 319, 332–34, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In this case, John Street received ample notice and an opportunity to be heard before the foreclosure was completed.

John Street was notified that it had missed Loan payments and was required to bring the Loan current. (Non–FDIC 56.1 Stmt. ¶¶ 69–72.) John Street was notified by letter that the Loan was in default. (Non–FDIC 56.1 Stmt. ¶¶ 73–74.) John Street was also notified by letter that the FDIC/R would exercise its rights and remedies under the Mortgage if the defaults were not cured. (Non–FDIC 56.1 Stmt. ¶ 75.) After AEW and CMR submitted the Case, which recommended that the FDIC/R initiate a foreclosure action, a committee consisting of Campagna and Anderson reviewed the Case, determined that it had sufficient information, and approved the Case. (Non–FDIC 56.1 Stmt. ¶¶ 90–98.) On or about November 12, 1993, the FDIC/R commenced an action to foreclose the Mortgage. (Non–FDIC 56.1 Stmt. ¶ 103.) John Street had the opportunity to contest the foreclosure in court before it was completed and indeed in this action John Street seeks the costs of defending the foreclosure action. (Am. and Rest. Compl. ¶ 103.)

The evidence establishes without any genuine dispute that the plaintiff received notice that it was in default, that it had the opportunity to cure the defaults but failed to do so, and that it could be subject to a foreclosure proceeding. The plaintiff's Case was reviewed by a Committee to determine whether foreclosure was appropriate. The plaintiff then had the opportunity to argue its case in a judicial foreclosure proceeding before the foreclosure was completed. The plaintiff received the notice and opportunity to be heard that satisfied due process. *See, e.g., Johnson v. United States Dept. of Agriculture*, 734 F.2d 774, 783 n. 7 (11th Cir.1984). Therefore, the plaintiff has failed to establish any violation of due process.

**7.** The plaintiff indisputably defaulted on its obligations under the Mortgage Agreement. While the plaintiff seeks to relitigate this issue, it is precluded from doing so by collateral estoppel, or issue preclusion, which "bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding if that party had a full and fair opportunity to litigate the issue in the prior proceeding...." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 n. 5 (2d Cir.2000) (citation omitted). The plaintiff litigated this issue in *John Street I*, the Court ruled against it on this issue, and the Second Circuit Court of Appeals affirmed the judgment. Collateral estoppel clearly applies. This Court found that the plaintiff failed to make the interest payment due on July 15, 1993, as required by the Mortgage. *See John Street Leasehold LLC*, 1998 WL 411328, at *10. Moreover, the plaintiff has conceded by not contesting the Non–FDIC Defendants' statement that "John Street never cured that April 15, 1993 payment default." (Non–FDIC 56.1 Stmt. ¶ 56.) The plaintiff has also conceded by not contesting the statement that "John Street defaulted on its obligations under the Mortgage by failing to make payments of Basic Interest ... in the amount of $156,851.93 each due on July 1, 1993, August 1, 1993, September 1, 1993, October 1, 1993, and November 1, 1993." (Non–FDIC 56.1 Stmt. ¶ 60.)

2.

 The plaintiff also alleges that its due process rights were violated on the ground that Campagna was allegedly not an impartial Ombudsman because he served as a Committee member that approved the foreclosure before he acted as an Ombudsman. The plaintiff has failed to establish that any of these allegations constitute a due process violation. He has failed to show that he had any constitutionally protected interest in an Ombudsman. Moreover, it is undisputed that Campagna had already voted on the Case and authorized the foreclosure before acting as an Ombudsman. The fact that the plaintiff was given the opportunity to present its position yet again to one of the people who had voted for foreclosure does not establish that the plaintiff was denied any due process rights but rather shows that the plaintiff had yet another opportunity to present its views.

C.

 Finally, Campagna and Anderson argue that the plaintiff has not established a violation of its right to equal protection. The plaintiff simply asserts that it has an equal protection claim without explaining the basis for such a claim. Because the plaintiff has not shown that the actions of Campagna or Anderson infringed upon one of its fundamental rights or were based on à suspect classification, any difference in the way that the plaintiff was treated requires only that it be rationally related to

a legitimate government interest. *See, e.g., Furlong v. Shalala,* 156 F.3d 384, 392 (2d Cir.1998). The plaintiff has not even shown that it was treated in a way different from a similarly situated borrower. It has not shown that the actions taken by Campagna and Anderson were irrational. There plainly was a rational basis for the FDIC to foreclose on a mortgage when the borrower was in default and foreclosure advances the interest in protecting the assets of the FDIC. The plaintiff therefore has no equal protection claim.[8]

V.

The FDIC moves for summary judgment dismissing the plaintiff's sixth cause of action, which essentially seeks to impute liability to the FDIC Defendants for the allegedly tortious conduct of the Non–FDIC Defendants alleged in the first four causes of action. As explained above, the plaintiff has no cause of action for tort against the Non–FDIC Defendants. Thus, there is no underlying tortious conduct by the Non–FDIC Defendants for which the FDIC Defendants can be held liable.[9]

 Moreover, the plaintiff's sixth cause of action is procedurally flawed because it names the wrong party. Common law tort claims against a federal agency must be filed against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"). *See, e.g., Rivera v. United States,* 928 F.2d 592, 609 (2d Cir.1991); *Dolan v. United States*

---

**8.** At oral argument, the plaintiff noted that it was exploring the implications of the recent Second Circuit Court of Appeals decision in *Malesko v. Correctional Serv. Corp.,* 229 F.3d 374 (2d Cir.2000). In that case, the Court of Appeals held that certain private corporations acting under color of federal law may be sued under *Bivens.* However, based on the statute of limitations and underlying merits, there is no sustainable *Bivens* action based on the facts of this case against any of the defen-

dants, whether they be federal actors or private actors acting as agents for the FDIC.

**9.** The plaintiff has abandoned any common law tort claims based on behavior by the FDIC or Campagna or Anderson. (Plaintiff's Memo. of Law in Opposition to FDIC Defendants' Motion to Dismiss or for Summary Judgment, at 11–12.)

*Army,* No. 98 Civ. 5110, 1999 WL 199012, at *2 (S.D.N.Y. April 9, 1999).[10] Similarly, to the extent the plaintiff seeks to hold Campagna and Anderson liable for the common law torts of the Non–FDIC Defendants, this cause of action is also barred because any claim against federal employees for common law tort can only be brought against the United States under the FTCA. *See, e.g., Rivera v. United States,* 928 F.2d 592, 608 (2d Cir.1991). The United State Attorney for the Southern District of New York has certified that both Campagna and Anderson were acting within the scope of their employment as employees of the United States at the time of the incidents alleged in the Amended and Restated Complaint. (Certification by United States Attorney for the Southern District of New York Mary Jo White dated Sept. 14, 2000 attached to FDIC Defendants' Notice of Motion dated Sept. 15, 2000.) In light of that certification, any common law tort claim against Campagna and Anderson must be brought against the United States pursuant to the FTCA. *See, e.g., Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 509–10 (2d Cir.1994).

The Court has no subject matter jurisdiction to hear the plaintiff's common law tort claims. Under the FTCA, a plaintiff must first present an administrative claim to the proper federal agency for this Court to have subject matter jurisdiction over the claim. 28 U.S.C. § 2675; *Robinson,* 21 F.3d at 509–10. Because the plaintiff

has failed to meet this requirement for any of the FDIC Defendants, the Court has no subject matter jurisdiction over any common law tort claims against the FDIC, Campagna, or Anderson. Thus, the plaintiff's sixth cause of action should be dismissed.[11]

## VI.

▮▮▮▮ Finally, the plaintiff requests further discovery. The plaintiff has not met the procedural requirements of Fed. R.Civ.P. 56(f), which provides for the continuance of a summary judgment motion under certain circumstances. To withstand a motion for summary judgment on the grounds that further discovery is necessary, the party opposing summary judgment "must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.1999) (internal quotation marks omitted). Failure to file such an affidavit constitutes waiver of any claim that discovery was inadequate, even if the party opposing summary judgment asserts in its papers that further discovery is required. *See id.; Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137 (2d Cir.1994); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985); *Fowler v.*

---

**10.** For the reasons explained above, the plaintiff has no *Bivens* claim against Campagna and Anderson. The FDIC also could not be held liable for any alleged constitutional torts by Campagna and Anderson because a federal agency can not be subject to a *Bivens* action. *See, e.g., FDIC v. Meyer,* 510 U.S. 471, 483–86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

**11.** The plaintiff attempts to avoid dismissal of the sixth cause of action by arguing that it is not seeking to hold the FDIC Defendants re-

sponsible for common law torts but rather for violations of FIRREA. This argument ignores that the plaintiff's tort theories against the Non–FDIC Defendants, for which the plaintiff seeks to hold the FDIC Defendants liable were in fact grounded in common law tort theories, primarily based on *Singer.* To the extent that the plaintiff retreats to claims under FIRREA, for the reasons explained above, the plaintiff has no private right of action for any alleged violations of FIRREA.

*Transit Supervisors Org.,* No. 96 Civ. 6796, 2000 WL 303283, at *3 (S.D.N.Y. March 23, 2000).

Here, the plaintiff has not filed an affidavit complying with the requirements of Rule 56(f). The conclusory declaration by the plaintiff's lawyer fails to set forth the specific facts sought to resist the motions, how they are to be obtained, and how they could reasonably be expected to create a genuine issue of material fact. The plaintiff retreats into unsupported and conclusory speculations about missing documents which are insufficient to resist a motion for summary judgment and which are refuted by the extensive discovery record in this case and in *John Street I*. Moreover, the magistrate judge has ruled that the defendants have not withheld any non-privileged documents in this case. *John Street Leasehold, LLC,* 1999 WL 1029728, at *4. Therefore, this request is denied.

## CONCLUSION

For the reasons explained above, the defendants' motions are granted. The Clerk of the Court is directed to enter judgment dismissing the Amended and Restated Complaint and closing the case.

**SO ORDERED.**