Leo TSIMMER, Plaintiff,

v.

Mary Ann GANTNER, New York District Director of the United States Citizenship and Immigration Services ("USCIS"); Ruth A. Dorochoff, Chicago District Director, USCIS; Kay Leopole, Officer–in–Charge Milwaukee Sub–Office, USCIS; Michael Chertoff, Secretary of Department of Homeland Security; Emilio T Gonzalez, Director of USCIS, Department of Homeland Security; and U.S. Citizenship and Immigration Services, Defendants.

No. 06 Civ. 7867(CM).

United States District Court,
S.D. New York.

April 22, 2008.

Matthew Guadagno, David Kim, Bretz & Coven, LLP, New York, NY, for Plaintiff.

James Loprest, Sp. Asst. U.S. Attorney, S.D.N.Y., New York, NY, for Defendants.

### DECISION AND ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS

McMAHON, District Judge.

Defendants Mary Ann Gantner, District Director of the New York District of United States Citizenship and Immigration Services ("CIS");[1] Ruth A. Dorochoff, District Director of the CIS's Chicago District; Kay Leopole, Officer–in–Charge of the CIS's Milwaukee Sub–Office; Michael Chertoff, United States Secretary of Homeland Security; Emilio T. Gonzalez, Director of the CIS; the Department of Homeland Security; and the CIS (collectively, "defendants" or "Government"), have moved to dismiss the complaint of plaintiff Leo Tsimmer, A# 29–449–695 ("plaintiff" or "Tsimmer") pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure because: (1) the complaint is barred by a decision of the United States Court of Appeals for the Second Circuit in another case of plaintiff s; (2) the complaint is barred by the doctrine of collateral estoppel; (3) the complaint is *res judicata;* (4) the Court lacks subject matter jurisdiction to consider the complaint; and (5) the complaint fails to state a claim upon which the Court may grant relief. This action is the latest in a long line of attempts by plaintiff to forestall his lawful exclusion from the country. He has not yet won a round, but he has managed, by his constant litigating, to forestall his deportation.

Because the court lacks subject matter jurisdiction over the claims asserted, the case is dismissed. If I had jurisdiction to consider the merits, I would conclude that the plaintiff's claims are barred by res judicata and collateral estoppel.

### I. Background

#### A. The Expiration of Tsimmer's Conditional Resident Status

Tsimmer is a 39–year–old native and citizen of Russia. *Record* at 283.[2] On December 18, 1989, he married Bonnie Jean Verhunce ("Verhunce"), a United States citizen, in Madison, Wisconsin, where he was a student. *Id.* at 284. Based on that marriage, the INS granted Tsimmer the status of a conditional lawful resident of the United States, with an expiration date of April 23, 1992. *Id.* at 281.[3]

On or about March 17, 1992, the INS was contacted by Kelly Hayes ("Hayes") regarding Tsimmer. *Id.* at 276–77. Hayes gave the INS a sworn statement, *see id.* at 276–79, in which she stated that her roommate, Lisa Christopher, was Tsimmer's paramour. *Id.* at 276. Hayes stated that Tsimmer's relationship with Verhunce was not a "true marriage" and that Verhunce "had only married [Tsimmer] to help him gain U.S. residency." *Id.* at 279.

---

1. Andrea Quarantillo has succeeded Mary Ann Gantner as the District Director of the CIS's New York District and, therefore, her name should be substituted as defendant, pursuant to Fed.R.Civ.P. 25(d)(1).

2. References to the *"Record"* are to pages of the record of the administrative proceedings underlying the final order of exclusion against Tsimmer, as certified by the Executive Office for Immigration Review of the United States Department of Justice on November 18, 2002, and which was filed with the Second Circuit on November 22, 2002. Loprest decl., Ex. B (Feb. 21, 2007).

3. An alien seeking to obtain permanent residency based upon a marriage to an United States citizen may obtain such status only conditionally, *see* 8 U.S.C. § 1186a(a)(1), and is required to file a joint petition ("I–751 petition") with his or spouse to remove the condition in order to achieve unconditional lawful permanent resident status, *see id.* § 1186a(c)(2).

On or about April 17, 1992—six days before the expiration of Tsimmer's conditional resident status—Tsimmer and Verhunce filed a joint I–751 petition to remove the condition. *Id.* at 40–41; 283–84, At first, the INS rejected the I–751 petition because Tsimmer and Verhunce had failed to remit the correct filing fee, *see id.* at 37–38; *see also* 8 C.F.R. 216.4(a) (1992); however, Tsimmer and Verhunce later filed the petition with the correct fee on April 29, 1992—one week past the statutory deadline, *see Record* at 40. On August 31, 1992, the INS interviewed Tsimmer and Verhunce at its Milwaukee offices in connection with the petition, at which time they claimed to live at the same Madison address. *Id.* at 262, 276. However, because Tsimmer and Verhunce provided little documentary evidence that their marriage was *bona fide*—and because of Hayes's earlier communication—the INS determined to investigate their claims further. *See id.* at 262, 276–77.[4]

In response to an INS inquiry, the Wisconsin Department of Transportation informed the INS that its records showed different Madison addresses for Verhunce and Tsimmer. *See* Record at 262–63. When INS agents visited the first address, in August 1995, an individual claiming to be the landlady of the premises informed them that Verhunce was a tenant but that Tsimmer had never lived there. *Id.* The landlady also told the agents Verhunce had

been in a romantic relationship with a man other than Tsimmer for the previous three years. *Id.* When the INS agents visited the other Madison address, they discovered Verhunce living there; she informed the agents that she and Tsimmer had separated approximately three years earlier. *Id.* at 263. Verhunce also told the agents that, contrary to their statements at the August 1992 interview, she and Tsimmer had not been living together at the same address at that time. *Id.* Verhunce told the agents Tsimmer was "living in Moscow," but was unable to provide an address for him. *Id.*[5]

On March 28, 1996, the District Director of the INS's Chicago district office issued a decision denying the I–751 petition. *Record* 250–54.[6] The District Director pointed to the dearth of evidence indicating that the marriage between Verhunce and Tsimmer was *bona fide:* he also summarized the statements given to the INS by Verhunce, Hayes, and the landlady, and noted that Verhunce and Tsimmer were getting divorced. *Id.* at 250–52. The "substantial derogatory information" convinced the District Director that Tsimmer and Verhunce "were involved in a marriage of convenience for the purpose of obtaining immigration benefits" for Tsimmer. *Id.* at 253. Upon denying the petition, the INS referred Tsimmer to the Immigration Court in Chicago for the commencement of an administrative proceed-

---

4.  Tsimmer and Verhunce submitted only a telephone bill, a tax return for 1991, two letters from friends, and an apartment lease for August 1990 through March 1991 listing their names and those of two roommates' as tenants, as evidence their marriage was *bona fide. See* Record 37, 260–61.

5.  In May 1995, the INS had granted Tsimmer "advance parole" to reenter the United States following travel abroad while his I–751 petition was pending; in July 1995, upon Tsimmer's return from Russia, the INS paroled him into the United States. *See* Record 289;

*see also* 8 C.F.R. § 245.2(a)(4)(ii) (1994) (discretionary grant of advance parole permits alien without legal status to reenter United States after departing for travel abroad, without departure constituting waiver of any pending application).

6.  On or about September 6, 1995, Tsimmer's attorney sent the INS a letter (not in the record) claiming Verhunce and Tsimmer were getting divorced, and asking the INS to waive the joint petition requirement. *See, e.g., Record* at 256 (INS notice referring to letter), 258–59 (marital settlement agreement).

ing to exclude and deport Tsimmer from the United States. *Id.*

### B. *Tsimmer's Administrative Proceeding and Exclusion Order*

On March 28, 1996, the INS issued Tsimmer a Notice to Applicant for Admission Detained for Hearing Before Immigration Judge ("IJ"). *Record* at 290. The notice charged Tsimmer with being excludable from the United States pursuant to INA §§ 212(a)(5)(A) (i), 212(a)(6)(C)(i), and 212(a)(7)(A)(i)(I), respectively, as an alien: (1) seeking admission to the country for the purposes of performing skilled or unskilled labor; (2) who committed fraud to secure an immigration benefit; and (3) seeking to enter the United States without a valid or unexpired immigrant visa. *Id.* at 290; *see also* 8 U.S.C. §§ 1182(a)(5)(A)(i), 1182(a)(6)(C)(i), & 1182(a)(7)(A)(i)(I).

On April 8, 1997, after a number of adjournments, *see Record* at 240, 245–48, Tsimmer's exclusion hearing commenced before an IJ in New York.[7] Tsimmer conceded service of the INS's charging document and denied its charges. *Id.* at 241–42. On or about September 8, 1996, Tsimmer filed a motion with the IJ to terminate his exclusion proceeding or, in the alternative, to reconsider, and grant, his I–751 petition. *Id.* at 118–22.

On December 3, 1998, the IJ issued an order denying the motion and ordering Tsimmer excluded from the United States. *Id.* at 88–97 (Exclusion Proceedings, *In re Tsimmer*, No. A29–449–695 (Dec. 3, 1998)). The IJ held the INS had not met its burden to demonstrate Tsimmer was excludable for fraud, and dismissed that charge; however, the IJ held the INS had met its burden to demonstrate Tsimmer's excludability under the two remaining

charges. *Id.* at 95–96. The IJ held that Tsimmer was not assisted by the Supreme Court's decision in *Rosenberg v. Fleuti*, 374 U.S. 449, 460, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) (holding that a lawful permanent resident alien did not interrupt the continuity of his United States residence by an absence that was "brief, casual, and innocent"), because that decision's holding was inapplicable to conditional permanent residents, like Tsimmer. *Id.* at 91–92. Finally, the IJ rejected Tsimmer's request for review of his I–751 petition, holding that the regulations did not make such review available to aliens in exclusion proceedings. *Id.* at 94–95. The IJ certified his decision to the BIA for its review. *Id.* at 97.

On July 15, 2002, the BIA issued a decision directing that Tsimmer be excluded from the United States, but for different reasons than the IJ. *See Record* at 80–82 (Termination of Proceedings, *In re Tsimmer*, No. A29–499–695 (July 12, 2002)). Unlike the IJ, the BIA held that Tsimmer's status as a conditional lawful resident expired by operation of law on April 23, 1992, when Tsimmer and Verhunce failed to file a timely I–751 petition. *Id.* at 81. The BIA further held that Tsimmer's conditional resident status was not restored by the INS District Director's late consideration of the petition. *Id.* (citing 8 C.F.R. § 216.4(a) (6) (1994)). In light of the expiration of Tsimmer's status in 1992, the BIA held he could not have reentered the United States after foreign travel absent a grant of advance parole—and that, therefore, the INS properly placed him into an exclusion proceeding (as opposed to a deportation proceeding) when he attempted to reenter the country upon his return from Russia in July 1995. *Id.* at

---

**7.** Although Tsimmer's exclusion proceeding was originally scheduled to begin before an IJ in Chicago on November 22, 1996, the Immi-

gration Court changed the venue of the proceeding to New York, at Tsimmer's request. *See Record* at 130–34, 247–49.

81–82. Finally, the BIA held (as had the IJ) that Tsimmer, as an excludable alien, was not entitled to challenge the INS's determination that his marriage to Verhunce was not *bona fide. Id.*

On or about August 13, 2002, Tsimmer filed a motion with the BIA to vacate its July 15, 2002 decision and reopen his exclusion proceeding. *Record* at 6; *see also* 7–31 (supporting declarations), 32–79 (exhibits). In the motion, Tsimmer argued that the BIA had erred by failing to hold that the INS was estopped from excluding him because it had engaged in "affirmative misconduct" by incorrectly advising him to seek advance parole before traveling to Russia in 1995. *Id.* at 4–7. Tsimmer's motion also requested that his administrative proceeding be reopened and remanded to the IJ to consider applications he enclosed for various forms of relief from exclusion, including, *inter alia,* asylum, pursuant to INA § 208(a), 8 U.S.C. § 1158(a); withholding of exclusion, pursuant to INA § 243(h)(1), 8 U.S.C. § 1253(h)(1); and deferral of exclusion, under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention"), 1465 U.N.T.S. 85, G.A. Res. 39/46, U.N. Doc. A/39/51; 23 I.L.M. 1027(1984). *See Record* at 65–76.

The BIA denied Tsimmer's motion in a decision dated January 17, 2003. *See* Supplemental Loprest decl., Ex. A, Mar. 23, 2007. The BIA concluded that Tsimmer had failed to present it with "any facts or issues that were not, or could not have been, presented to the [IJ] during his exclusion hearing." *Id.* at 1. The BIA also held that facts alleged in Tsimmer's motion did not establish his *prima facie* eligibility for asylum, withholding of exclusion or Torture Convention relief. *Id.* Finally, the BIA held that Tsimmer had failed to

explain why he had not applied for those forms of relief earlier. *Id.* at 1–2.

## C. *Tsimmer's Petition for Review in the Second Circuit*

Tsimmer filed a timely petition for review of the BIA's decisions in the Second Circuit, pursuant to INA § 242(a). In his petition for review, Tsimmer again argued that the BIA had erred by failing to hold the INS was estopped from excluding him because it had engaged in "affirmative misconduct" by incorrectly advising him to seek advance parole before traveling to Russia in 1995. *See* Brief for Petittioner at 12–13, *Tsimmer v. Gonzales,* No. 02–4383/03–4343(2d Cir. May 26, 2005) (Summary Order). He argued that he was deprived of due process of law by the IJ's refusal to reconsider, and grant, his I–751 petition. *See id.* at 21–24. Finally, he argued that BIA had "overlooked" aspects of his case, *see id.* at 24–27, including "objectively reasonable" evidence that he was entitled to asylum, withholding of exclusion, and Torture Convention relief, *see id.* at 28–42.

On May 26, 2006, the Second Circuit (Cardamone, Jacobs, and Wesley, C.JJ.) denied Tsimmer's review petition. *Tsimmer v. Gonzales,* 02–4383/03–4343(2d Cir. May 26, 2005) (Summary Order) (*"Tsimmer I"*). In reviewing the BIA's July 15, 2002 decision, the Court of Appeals upheld the BIA's refusal to terminate Tsimmer's removal proceeding or revisit the INS's denial of his I–751 petition. *See Tsimmer I* at 2–4. The Court of Appeals held that Tsimmer was properly in exclusion proceedings because, "[w]hen he failed to file his I–751 petition within two years of the date he was granted conditional permanent resident status, that status terminated 'automatic[ally].' " *Id.* at 2 (quoting 8 C.F.R. § 216.4(a)(6) (1992)). The Court of Appeals further held:

Although the regulations provide that permanent resident status may ultimately be 'restored' if the petition is approved, Tsimmer's petition was ultimately denied. Therefore, when he traveled to Russia while his petition was still pending, he was not a lawful permanent resident, but rather a petitioner seeking to have that status restored. [Therefore], his parole into the United States upon his return did not operate as an admission into the country [and] when his underlying petition was denied and his parole was terminated, he was properly placed in exclusion—rather than deportation—proceedings.

*Id.* at 2–3 (citing, *inter alia, Leng May Ma v. Barber,* 357 U.S. 185, 188, 78 S.Ct. 1072, 2 L.Ed.2d 1246(1958)).

The Court of Appeals rejected Tsimmer's constitutional challenges to the BIA's refusal to review his I–751 petition, *see Tsimmer I,* at 2 (subjecting argument to "rational basis test," citing *Fiallo v. Bell,* 430 U.S. 787, 799, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977)), noting that, "aliens in exclusion proceedings, unlike those in deportation proceedings, are not entitled to review of the denial of an I–751 petition." *id.* at 3 (citing 8 U.S.C. § 1186(c)(3)(D); 8 C.F.R § 216.4(d) (2)). The Second Circuit specifically states that "Courts have long upheld as rational the distinction between aliens who have entered the United States and those who have not, and the granting of greater procedural and substantive rights to the former," *id.* at 3 (citing *Landon v. Plasencia,* 459 U.S. 21, 25–27, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982)). It ultimately concluded that:

Congress rationally could have determined that those aliens who choose to leave the country while their applications to adjust or restore status are pending, and who are aware of their precarious situation at the time they leave, could be subject to lesser rights and safeguards upon their return and parole. Therefore, the BIA did not abuse its discretion in declining to terminate Tsimmer's exclusion proceedings, nor did it violate equal protection in declining to review the denial of his petition.

*Tsimmer I at 3–4.*[8]

In reviewing the BIA's January 17, 2003 decision, the Court of Appeals held the BIA acted within its discretion in denying Tsimmer's motion to reopen his exclusion proceeding, *Tsimmer I* at 4–5. The Court of Appeals agreed with the BIA that Tsimmer had "failed to identify any errors of fact or law in [the BIA's] previous decision, and primarily repeated arguments that the BIA had already considered in his appeal." *Id.* at 4 (citation omitted). The Court of Appeals also agreed with the BIA's refusal to permit Tsimmer to apply for asylum, withholding of exclusion, and Torture Convention relief, holding:

The BIA rationally could have determined that Tsimmer failed to establish a *prima facie* case of either past persecution or a well-founded fear of future persecution, because (1) his family's experiences under Stalin were too remote, and his own experiences of discrimination, insufficiently severe to constitute persecution; (2) he admitted that he did not fear persecution at the time he first

8. The Court of Appeals rejected the contention that the INS was estopped from denying Tsimmer's I–751 petition, holding that he had failed to show that the INS engaged in any "affirmative misconduct" with respect to the petition. *Tsimmer I* at 3 n. 2 (holding the INS's "advice [to Tsimmer] was substantially correct, and it was under no obligation to provide an individualized warning as to the potential consequences of accepting the benefits of advance parole") (citing *West Covina v. Perkins,* 525 U.S. 234, 241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999)).

entered the United States; (3) his vague allegations and translated newspaper headlines were insufficient to establish a material increase in anti-Semitism in Russia; and (4) he failed to explain why he never applied for asylum previously. *Tsimmer I* at 4–5 (citing *INS v. Abudu,* 485 U.S. 94, 104–05, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988))

Approximately one month after the Second Circuit issued its mandate in *Tsimmer I,* Plaintiff filed this action. Plaintiff now seeks an order declaring that the INS's denial of his I–751 petition was unlawful, and an order directing Defendant to restore his conditional resident status or in the alternative provide him with an additional review of his I–751 Petition.

## II. *Discussion*

### A. *The Complaint Must be Dismissed for Lack of Subject Matter Jurisdiction*

■ The instant complaint cannot be heard by this Court. It is barred by recent legislation that excludes from the district court's jurisdiction any ability to hear challenges to Tsimmer's exclusion order. *See, e.g.,* Compl. ¶ 54 (claiming INS should be retroactively estopped from "taking any adverse actions based on [its] denial" of Tsimmer's I–751 petition, including, presumably, excluding Tsimmer). Specifically, § 106(a)(1)(B) of the Real ID Act, Pub.L. No. 109–13, Title I, 119 Stat. 231 (May 11, 2005), amended INA § 242, 8 U.S.C. § 1252 (governing judicial review of administrative removal, deportation, and exclusion orders) to provide:

(5) Exclusive Means of Review—Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means of judicial review of an order of removal entered or issued under any provision of this Act ....

8 U.S.C. § 1252(a)(5); 119 Stat. 240 (2005).

In light of the Real ID Act's broad language, the Second Circuit and its district courts have consistently held that courts lack jurisdiction to consider challenges to administrative orders of removal, deportation, and exclusion, however they are presented.[9] *See, e.g., Spina v. DHS,* 470 F.3d 116, 123 (2d Cir.2006) ("The REAL ID Act ... eliminates habeas corpus jurisdiction over final orders of deportation, exclusion, and removal, and provides that 'a petition for review filed with an appropriate court of appeals ... shall be the sole and exclusive means for judicial review' of such orders") (quoting Real ID Act); *Gittens v. Menifee,* 428 F.3d 382, 384–85 (2d Cir.2005) (same); *In re Lawrence,* 448 F.Supp.2d 572, 573 (S.D.N.Y. 2006) ("Pursuant to th[e Real ID Act], this Court is jurisdictionally barred from considering a challenge to a removal order."); *Saavedra De Barreto v. INS,* 427 F.Supp.2d 51, 55 (D.Conn.2006) (".... district courts do not ... have jurisdiction to review claims that are not found to be independent of removal challenges") (citations omitted); *Enwonwu v. Chertoff,* No.

---

9. In 1996 Congress eliminated the legal distinction between exclusion and deportation proceedings, consolidating them together under the title of removal. However, this distinction applies only to cases commenced after April 1, 1997. ILLEGAL IMMIGRATION REFORM AND IMMIGRATION RESPONSI- BILITY ACT, Pub.L. No. 104–208, 110 Stat. 3009–594 (1996) ("IIRIRA"); *Skelly v. INS,* 168 F.3d 88, 90 (2d Cir.1999). Today aliens in exclusion are entitled a review of administrative findings in front of the IJ during their removal hearing. 8 U.S.C. 1186a(b)(2); 8 CFR 216.4 (2007).

06 Civ. 0834(SR) 2006 WL 3833481, at *1 (W.D.N.Y. Dec. 22, 2006) ("The Court has no jurisdiction to review the merits of the removal order"); *Munoz v. Gonzales,* No. 05 Civ. 6056(SHS), 2005 WL 1644165, at *1 (S.D.N.Y. July 11, 2005) (same; dismissing habeas petition challenging removal order). In passing the REAL ID Act, Congress clearly intended " 'to have all challenges to removal orders heard in a single forum,' i.e. the courts of appeals." *Spina,* 470 F.3d at 124 (quoting *Bonhometre v. Gonzales* 414 F.3d 442, 446 (3d Cir.2005)); *see* H.R. Conf. Rep. No. 109–72, at 173–75(2005).

Because, on any fair reading, the complaint challenges Tsimmer's exclusion order, it must be dismissed because it has been bought in a court that lacks jurisdiction to hear the matter.

### B. *This Court is Bound by the Second Circuit's Decision in Tsimmer I*

■ If there were jurisdiction to consider the issues raised in the complaint, I would be constrained to dismiss the action as barred by res judicata. The Second Circuit in *Tsimmer I* considered, and rejected, substantially the same claims raised here. And to the (limited) extent that the pleading could be construed to raise new issues, they arise out of the same nucleus of operative facts as the issues adjudicated in Tsimmer I. Therefore, they could and should have been brought to light in Tsimmer I—and plaintiff's failure to do so means that they are precluded by res judicata.

There can be no doubt that the issues Tsimmer raises here were disposed of in his prior lawsuit. To the extent that Tsimmer claims the INS's denial of his I–751 petition is subject to review for an abuse of discretion, *see* Compl. ¶¶ 57–75, the Second Circuit held such review is not available to Tsimmer because he was properly classified as an excludable alien, *see Tsimmer I,*

at 3–4. Finally, although the complaint recycles Tsimmer's constitutional challenges, *see* Compl, ¶¶ 76–93, the Second Circuit rejected those claims, as well, *see Tsimmer I* at 3–4.

Tsimmer quarrels over aspects of the Second Circuit's decision in *Tsimmer I. See, e.g.,* Compl. ¶ 46 ("Although the Second Circuit found that the Board's refusal to review the denial of the I–751 petition did not violate equal protection, the Court did not explain its reasoning for that finding."). It goes almost without saying, however, that even if the Second Circuit's holdings were incorrect—which they are not—this Court could not overturn them. *See, e.g., Crane Co. v. American Standard, Inc.,* 490 F.2d 332, 341 (2d Cir.1973) ("It is fundamental that a district court must carry out the mandate of a court of appeals, even if the mandate was in error.").

■ Under the doctrine of *res judicata,* "[a] final judgement on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.,* 400 F.3d 139, 141 (2d Cir.2005) (quoting *St. Pierre v. Dyer,* 208 F.3d 394, 399 (2d Cir.2000)). The touchstone of a *res judicata* determination is whether the litigant had the opportunity to obtain review of a contested issue in the earlier proceeding. *See, e.g., Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action.") (emphasis added); *Burgos v. Hopkins,* 14 F.3d 787, 792 (2d Cir.1994) (holding "[t]here must be an identity of the issue which has necessarily been decided in the prior action and is decisive of the present action," and "there must have been a full and fair opportunity

to contest the decision now said to be controlling").

The Second Circuit takes a broad view of *res judicata,* holding the doctrine bars any subsequent suit involving the same "claim" or "nucleus of operative fact." *Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 108 (2d Cir.2000); *see also, e.g., Lacy v. Principi,* 317 F.Supp.2d 444, 447 (S.D.N.Y.2004) (*res judicata* precludes consideration of any legal theory, cause of action, or defense that could have been asserted in prior related action between parties) (citation omitted); *see also State Trading Corp. of India, Ltd. v. Assurance-foreningen Skuld,* 921 F.2d 409, 418 (2d Cir.1990) ("A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.") (citation omitted).

That is the case here, inasmuch as Tsimmer challenges the INS's denial of his I–751 petition, which was based upon the agency's conclusion that his marriage to Verhunce had been entered into for immigration purposes. *See, e.g.,* Compl., "Wherefore" clause, ¶ 1. Even if Tsimmer presented this Court with a previously unraised argument over the denial of his I–751 petition, that claim would arise from the same "nucleus of operative fact" as his prior Second Circuit petition for review,

and would thus be barred as *res judicata.* See *Waldman,* 207 F.3d at 108; *see also, e.g., Sabhari v. Frazier,* 2007 WL 295261, at * 12 (D.Minn. Jan.30, 2007) (dismissing constitutional challenge to INS denial of marriage-based visa petition as *res judicata* where prior lawsuit had challenged agency determination that marriage was fraudulent and therefore current action "ar[o]se from the same nucleus of operative facts"; nonetheless granting summary judgment to alien petitioners).[10] Because Tsimmer had the opportunity in *Tsimmer I* to obtain review of the claims he raises here, the claims are barred as *res judicata* as well.

## CONCLUSION

The complaint is dismissed for want of subject matter jurisdiction.

The Clerk of the Court is directed to close the file.

---

**10.** Application of the doctrine of *res judicata* is particularly appropriate here, given the historical intent of Congress to limit litigation over the efforts of excludable aliens like Tsimmer to remain in the United States. For instance, INA § 242(d)(2), 8 U.S.C. § 1252(d)(2), governing review of orders of removal, exclusion, and deportation, generally permits review only where "another court has not decided the validity of the order" already. Where discussing an earlier version of the INA, the Supreme Court held that its "plain objective [was] 'to create a single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens.'" *Foti v. INS,* 375 U.S. 217, 225, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963)

(quoting H.R.Rep. No. 1086, 87th Cong., 1st Sess. 22, at 22–24 (1961)) (discussing former INA § 106(c), 8 U.S.C. § 1255a(c) (1994) (amended and recodified at 8 U.S.C. § 1252(d)(2) (Supp. IV 1998))); *see also Jorge v. Hart,* No. 97 Civ. 1119(MBM), 1997 WL 531309, at *10 (S.D.N.Y. Aug. 28, 1997) (noting that INA "essentially created a *res judicata* defense to a . . . petition filed after an alien already had obtained review"), aff'd, 6 Fed. Appx. 64 (2d Cir.2001) (unpublished decision); *United States ex rel. Tanfara v. Esperdy,* 347 F.2d 149, 151 (2d Cir.1965) (holding that "legislative history reveals that Congress sought . . . to eliminate dilatory litigational tactics on the part of aliens subject to deportation" orders).